The STATE of Ohio, Appellee,

v.

SOUTH, Appellant.

[Cite as *State v. South*, 162 Ohio App.3d 123, 2005-Ohio-2152.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 22289.

Decided May 4, 2005.

**124**

Richard D. Eisenberg, for appellant.

Richard S. Kasay, Assistant Prosecuting Attorney, for appellee.

BATCHELDER, Judge.

{¶ 1} Appellant, Edward A. South, appeals from a conviction in the Summit County Court of Common Pleas.  We reverse.

I

{¶ 2} At approximately 2:15 a.m. on November 23, 2003, Hudson Police Officer Sabrina Spencer was parked in a police cruiser along State Route 303 in Hudson, monitoring traffic.  She observed a white, four-door Dodge Intrepid sedan turn onto westbound 303 without making a complete stop at the stop sign.  As the sedan passed her location, she observed the driver to be an older white male and registered his speed at 36 mph in a 25 mph zone.  Officer Spencer activated her cruiser's lights and siren and began pursuit of the sedan along Route 303.  She also activated the cruiser's dashboard camera almost immediately.  The central issue in this appeal is the videotape recording from this camera.

{¶ 3} According to the video, after a little more than two minutes of pursuit, the sedan eventually pulled over, and Officer Spencer activated the cruiser's spotlight.  Because of the extreme glare from the cruiser's lights, as well as from the sedan's rear lights, neither the license plate number nor a clear picture of the driver is evident in the video.  As the sedan idled, Officer Spencer exited her cruiser and walked slowly to the passenger-side rear of the sedan, crossing in front of the cruiser, and apparently looking at the driver through the sedan's rear window.  As she reached the rear of the sedan and began to circle back around to the driver's side, the sedan suddenly accelerated away.  Officer Spencer hurried back to her car, radioed for assistance, and pursued the sedan west on Route 303

at speeds of up to 90 mph. The high-speed chase continued south on State Road into Cuyahoga Falls until she lost sight of the sedan and the driver escaped. During the pursuit, Officer Spencer had called into her dispatcher, reporting the license plate number she had read from the sedan and providing a description of the driver as a "white male driver; looked like he was in his late 40's, early 50's." She later described him as slight or frail and wearing glasses.

{¶ 4} The license plate number reported by Officer Spencer was discovered to be registered to a leasing company, and the VIN associated with that license registration was further traced to one Joe Mollric, who explained to police that he had not been in Hudson that night, had never been to Kepner's Tavern, and that the VIN in question was for a Ford Explorer SUV. Furthermore, Mollric is 6'1" tall and 287 lbs. Mollric was eliminated as a suspect.

{¶ 5} Officer Spencer assumed that the sedan had originally turned onto Route 303 from a parking lot near Kepner's Tavern, so she returned to that location and spoke with the bartender and some customers. Upon hearing a physical description, the bartender implicated appellant, Edward A. South. Several days later, the Hudson Police arrived at South's home, Officer Spencer identified him as the driver of the sedan, and the officers arrested him. Upon arrival, the officers discovered South driving his own car, an Oldsmobile. Neither the reported license plate nor the white Dodge Intrepid sedan was ever located.

{¶ 6} For the events on the night of November 23, 2003, South was charged with one count of failure to comply with the order or signal of a police officer in violation of R.C. 2921.331(B), a third-degree felony; one count of driving under suspension in violation of R.C. 4507.02, a first-degree misdemeanor; and one count of failure to obey a stop sign in violation of R.C. 4511.12, a minor misdemeanor. South pleaded not guilty and sought discovery under Crim.R. 16, specifically requesting, among other things, a copy of the police-cruiser video. When the state refused to provide the discovery, South moved to compel discovery, which the court denied. Eventually, the case proceeded to trial.

{¶ 7} The case was tried to a jury, which returned guilty verdicts on all three counts. South filed a motion to set aside the verdict, which was denied. Thereafter, the court sentenced him accordingly. South timely appealed, asserting three assignments of error for review, which have been consolidated to facilitate the analysis.

## II

### First Assignment of Error

Appellant was denied due process by the state's refusing to comply with Criminal Rule 16 by failing to produce requested discovery.

### Second Assignment of Error

The trial court erred in denying appellant's motion to compel.

### Third Assignment of Error

The trial court erred in denying appellant's motion to set aside verdict.

{¶ 8} South asserts that the state wrongfully refused to provide discoverable materials, that the trial court erred in refusing to compel the state to produce those materials, and that it was demonstrated at trial that the refusal of certain materials prior to trial severely prejudiced his defense. We agree.

{¶ 9} In each assignment of error, South argues in effect the same point: that he was denied the right to certain discovery due to a misinterpretation or misapplication of Crim.R. 16, under the guise of open-file discovery. We begin with the axiom:

> It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each.

*Marbury v. Madison* (1803), 1 Cranch 137, 5 U.S. 137, 177, 2 L.Ed. 60. Thus, we are called upon to consider the application and effect of a Rule of Criminal Procedure and proceed under a de novo standard of review. See *Raceway Video & Bookshop, Inc. v. Cleveland Bd. of Zoning Appeals* (1997), 118 Ohio App.3d 264, 269, 692 N.E.2d 656 ("On matters of law—choice, interpretation, or application—our review is, of course, plenary"). See, also, *State v. Linscott* (Aug. 22, 1995), 4th Dist. Nos. 94CA1633 and 94CA1634, at 6, 1995 WL 500512 ("The state maintains that this matter 'should have been resolved pursuant to the Criminal Rules of Procedure that govern discovery.' We conduct a de novo review to determine the applicable law that governs discovery").

{¶ 10} Crim.R. 16(A) provides: "Upon written request each party shall forthwith provide the discovery herein allowed." This includes providing copies of material evidence within the state's custody. Crim.R. 16(B)(1)(c). "A defendant has a constitutional guarantee to access to evidence." *State v. Benson*, 152 Ohio App.3d 495, 2003-Ohio-1944, 788 N.E.2d 693, at ¶ 10. Moreover, the Ohio Supreme Court has been explicit, stating that "the rule does *not* provide for what is often called 'full,' 'complete' or 'open file' discovery." (Emphasis sic.) *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 428, 639 N.E.2d 83. Thus, under prevailing state law, a criminal defendant has no right to open-file discovery, but does have that right under Summit County Local Rules. See Loc.R. 21.06. However, so argues the state, the bestowal of open-file discovery is not wholly benevolent, but rather, serves to geld the plain meaning of Crim.R. 16

so that the state need not "forthwith provide" the copies of material evidence discussed in Crim.R. 16(B)(1)(c). Because we favor the plain language of the rules, we cannot agree.

{¶ 11} South made a timely, written request to the state seeking discovery of numerous materials, including a specific request for a copy of the police cruiser's dashboard videotape. The state offered open-file discovery, which allowed South to review the file materials, but refused to provide a copy of the videotape. Upon South's motion to compel, the trial court concluded that production was not necessary because open-file discovery was sufficient. The case proceeded to trial, and South argues that he was prejudiced by the inability to obtain the evidence prior to trial. Specifically, South argues that had he been provided a copy of the videotape, he might have been able to enhance it and disprove the state's case under either of two possibilities. First, he suggests that Officer Spencer misread the license plate number from the sedan and that if the actual license plate number could be obtained from the videotape, then the sedan could be located and the true culprit identified. Alternatively, enhancement of the video might provide a better picture of the driver and thereby show that someone other than South was driving the sedan.

{¶ 12} Because the refusal to provide South with a copy of the videotape prevented him from enhancing the tape and thereby demonstrating its materiality to his defense, we cannot conclude that the refusal to provide a copy of the tape was immaterial. Therefore, we cannot conclude that open-file discovery, in this circumstance, was sufficiently protective of South's constitutional right of access to evidence. The Second District Court of Appeals has opined in a similar case:

> Police cruisers are equipped with videotape cameras in order to make a record of [the] events for any later prosecution. On that basis, and pursuant to Crim.R. 16, they are *available for use by an accused as they are for use by the State* in such proceedings.

(Emphasis added.) *State v. Fuller* (Apr. 26, 2002), 2nd Dist. No. 18994, 2002 WL 857671. In the present case, the state intended to and did in fact use the videotape at trial. Moreover, the state candidly admitted that it had attempted to enhance the videotape, but had failed. If these videotapes are truly available to the defendant the same "as they are for use by the State," then the defendant must be afforded an opportunity at least equal to that which the state would have to enhance the videotape in preparation of trial. South was afforded no such opportunity, despite his requests.

{¶ 13} The state contends that even if its refusal to provide the videotape was noncompliant with Crim.R. 16, South has still failed to show that he was prejudiced by the refusal—as he offers only speculation and cannot demonstrate

that the tape would have proven his innocence.   After our initial bewilderment, we question whether the state is facetious in advancing this Alice–in–Wonderland argument.   The tautology is too obvious: the defendant has not justified his right to a copy of the videotape upon which he might experiment in search of exculpatory evidence because he has not already proven that the experiment would produce exculpatory evidence.   This argument proves nothing but that the defendant has conducted no experiment on a tape he does not have.   The repetitive and circular invective is dizzying.

{¶ 14} Thus, we are reminded of Alice's tumble down the rabbit hole, and the point at which she observed the Knave of Hearts standing trial for theft of the Queen's tarts.   Much to his dismay, the Knave was similarly unable to disprove accusations that he had authored an allegedly incriminating letter:

"There's more evidence to come yet, please your Majesty," said the White Rabbit, jumping up in a great hurry; "this paper has just been picked up."

"What's in it?" said the Queen.

"I haven't opened it yet," said the White Rabbit, "but it seems to be a letter, written by the prisoner to—to somebody."

"It must have been that," said the King, "unless it was written to nobody, which isn't usual, you know."

"Who is it directed to?" said one of the jurymen.

"It isn't directed at all," said the White Rabbit; "in fact, there's nothing written on the *outside*."   He unfolded the paper as he spoke, and added "It isn't a letter, after all: it's a set of verses."

"Are they in the prisoner's handwriting?" asked another of the jurymen.

"No, they're not," said the White Rabbit, "and that's the queerest thing about it."   (The jury all looked puzzled.)

"He must have imitated somebody else's hand," said the King. (The jury all brightened up again.)

"Please your Majesty," said the Knave, "I didn't write it, and they can't prove I did: there's no name signed at the end."

"If you didn't sign it," said the King, "that only makes the matter worse. You MUST have meant some mischief, or else you'd have signed your name like an honest man."

Lewis Carroll, Alice's Adventures in Wonderland (1866; 1928 Ed.).   Accordingly, if South cannot prove that he was not the driver of the car, then he has no right to demand evidence with which he might prove that he was not the driver.   This is patently absurd.   See, e.g., *Crawford v. Washington* (2004), 541 U.S. 36, 62, 124 S.Ct. 1354, 158 L.Ed.2d 177 ("Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty").

{¶ 15} While we favor the Alice–in–Wonderland analogy, other jurisdictions confronted with similar circular reasoning have invoked the comfortably worn allegory of Joseph Heller's Catch–22. A Pennsylvania United States District Court stated:

> Here, Petitioner could not reasonably prove his case without expert testimony. Thus, by refusing Petitioner the funds to hire such an expert, the Pennsylvania courts prevented him from substantiating his claim that the Commonwealth's fire science evidence was erroneous. This Court is unwilling to enforce the 'catch–22' of defaulting Petitioner for failing to make the case that an expert is needed while denying the funds necessary to hire one. Petitioner cannot reasonably be said to have waived his substantive argument simply because the state courts refused him the means of making it.

*Albrecht v. Horn* (D.C.Pa.2004), 314 F.Supp.2d 451, 461. And from the Minnesota Supreme Court:

> [A]pplying the [*State v.*] *Sanders* [ (Minn.1985), 376 N.W.2d 196] holding puts the appellant in a perfect "Catch 22." Appellant is not entitled to a *Schwartz* hearing absent a showing of prejudice, but without a *Schwartz* hearing the appellant has no way of showing prejudice. He can only speculate as to improprieties that could have taken place while the jury was separated. Fundamental fairness requires a presumption of prejudice to the appellant entitling the appellant to a *Schwartz* hearing * * *.

*Minnesota v. Erickson* (Minn.1999), 597 N.W.2d 897, 905 (Stringer, J., concurring). A Georgia appellate court stated:

> According to the [Georgia] Supreme Court, Madden failed to show actual prejudice because he "merely speculated that if he could have remembered the date, he might have been able to provide an alibi defense." *State v. Madden* [1978], 242 Ga. 637, 638, 250 S.E.2d 484, 485, supra. Thus is heralded into the law of this state a "Catch–22" of the highest magnitude: It is not enough to state that the passage of time has deprived you of any possibility of mounting a defense and to follow up your statement by facing trial without any defense whatsoever. No, apparently you must also be able to state exactly what your defense would have been, were you to be able to remember it. Of course, if you can do that, then you could probably go ahead and present your defense, and there would be no need to avail yourself of the protective device forged by the United States Supreme Court's decisions * * *. In summary, if you can't present a defense, you must specify what it would have been; but if you can specify what it would have been, then you should have presented it, for the passage of time has not deprived you of it.

*Madden v. Georgia* (1979), 149 Ga.App. 367, 368, 254 S.E.2d 490. From the Fourth Circuit Court of Appeals:

> It is easy to perceive the unfairness of requiring the defendant to prove prejudice to the same degree of certainty whether or not he was permitted to *voir dire* the jury. Indeed portions of the majority opinion illustrate the Catch–22 the holding will create. * * * However, a defendant can hardly be expected to prove that he was prejudiced through the use of adequate *voir dire* when he has been denied all right to conduct *voir dire.*

*Wells v. Murray* (C.A.4, 1987), 831 F.2d 468, 481 (Murnaghan, J., dissenting). Thus, we are left to ponder this Catch–22 of how South would so conclusively prove that an enhanced version of the tape would establish his innocence without having access to the tape or an opportunity to attempt the anticipated enhancement. If the state's rebuttal is to call for testimony by a video-enhancement expert, then its argument against speculation is entirely undone, for an expert opinion is still just that—an opinion—which is no more than speculation all dressed up in a fancy suitcoat. Moreover, the state implicitly admitted the possibility that the video might be enhanced when it conducted its own experimentation toward that end, and we are confident that had the result of that experiment been to the benefit of the state's case, it would have offered the enhanced version at trial. Thus, we remain unpersuaded by the state's contention that South failed to show prejudice.

{¶ 16} Finally, the Ohio Supreme Court has emphasized Crim.R. 16's mandatory nature, and explained, "The philosophy of the Criminal Rules is to remove the element of gamesmanship from a trial." *State v. Howard* (1978), 56 Ohio St.2d 328, 333, 10 O.O.3d 448, 383 N.E.2d 912. The state's angst over South's discovery requests and the ensuing refusal to provide a copy of the videotape appear to be the type of gamesmanship that the Supreme Court admonished against in *Howard.*

{¶ 17} We conclude that the state should have provided the videotape, that the court should have compelled the production of the videotape if necessary, and that the failure to do so was per se prejudicial to South. South's assignments of error are well taken.

### III

{¶ 18} South's assignments of error are sustained. The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with this decision.

Judgment reversed
and cause remanded.

MOORE, J., concurs in judgment only.

CARR, P.J., dissents.

CARR, Presiding Judge, dissenting.

{¶ 19} I respectfully dissent. Although not mentioned in the majority opinion, the first issue we as an appellate court must examine is whether the trial court abused its discretion in denying appellant's motion to compel. The granting or denial of motions to compel discovery are reviewed under an abuse-of-discretion standard. *State ex rel. The V Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 469, 692 N.E.2d 198. As I believe the trial court did not abuse its discretion in refusing to order the state to provide a copy of the dashcam video, I would affirm.

{¶ 20} Although appellant was provided with complete open-file discovery pursuant to Loc.R. 21.06, appellant was not given copies of items he requested. However, he was able to view, review, inspect, and take notes pursuant to the open-file discovery custom followed in Summit County. Appellant filed a motion to compel to obtain copies of the items he requested. The trial court denied this motion to compel based on the fact that appellant had been able to view everything in the state's file including the videotape and based on case law from this court approving of the open-file discovery procedure. Nonetheless, despite a local rule providing for open-file discovery and case law from this court approving it, the majority concludes that the trial court erred in denying the motion to compel.

{¶ 21} Regulation of discovery is a matter within the sound discretion of the trial court. *State v. Lough*, 9th Dist. No. 21547, 2004-Ohio-596, 2004 WL 239917, at ¶ 11. This regulation will not be disturbed by a reviewing court absent an abuse of discretion. Id. The term "abuse of discretion" implies more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. When applying the abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. I cannot find that the trial court abused its discretion here.

{¶ 22} Finally, even if the trial court erred in not granting the motion to compel, appellant still has not demonstrated prejudice. The dashcam videotape was played for the jury. Both sides agreed that no identification of the driver or license plate could be made. In other words, it did not inculpate appellant in any manner.

{¶ 23} After personally viewing the videotape, I, too, do not find that it inculpated appellant. The video shows a high-speed pursuit. The license plate and driver of the car being pursued cannot be ascertained, because of either distance or the glare of the patrol car's lights. Moreover, the videotape shows the driver only from the back. It was basically irrelevant to the proceedings. This case was all about credibility. Either the jury was going to believe the

police officer's identification of appellant or not. Obviously, the jury believed the officer's testimony. Moreover, it is appellant's burden to demonstrate prejudice. Here appellant argues that if he had received a copy of the dashcam video, he might have been able to get it enhanced; and, if he had been able to get it enhanced, it might have demonstrated who the driver was, and he might have been able to demonstrate that he was not driving the vehicle. Mere speculation is insufficient to prove prejudice.

{¶ 24} The majority reasons that "the refusal to provide South with a copy of the videotape prevented him from enhancing the tape and thereby demonstrating its materiality to his defense." I can find no case law to support this presumption of prejudice for a failure to provide copies to the defense. In fact, prejudice is not presumed even in cases where the state has failed to disclose evidence.

{¶ 25} In *State v. Iacona* (Mar. 15, 2000), 9th Dist. No. 2891–M, 2000 WL 277911, this court held:

Potentially exculpatory evidence subject to disclosure under Crim.R. 16 is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Johnston* (1988), 39 Ohio St.3d 48 [529 N.E.2d 898], paragraph five of the syllabus. See, also, *State v. Keene*, [ (1998) ] 81 Ohio St.3d [646] at 650 [693 N.E.2d 246] (concluding that the definition of materiality provided by Brady is also applicable to Crim.R. 16[B][1][f] ). A reasonable probability consists of "a probability sufficient to undermine confidence in the outcome." *State v. Johnston*, 39 Ohio St.3d 48 [529 N.E.2d 898], at paragraph five of the syllabus.

{¶ 26} Appellant has not demonstrated prejudice. Appellant says he might be able to hire an expert who might be able to enhance the videotape. The videotape was disclosed to appellant. He was able to view it before trial. It was incumbent upon appellant to present some evidence to the trial court that the videotape could be enhanced. Appellant could have secured an affidavit from an expert attesting to the fact that the video could be enhanced so as to be able to view the driver and/or the license plate. All we have is speculation. In addressing a similar argument under an ineffective-assistance-of-counsel claim, the Fourth District Court of Appeals held:

Because no "enhanced" version of the videotape currently exists, it is difficult for us to perceive or to speculate how the tape would have aided Davis's defense. We note that courts have repeatedly held that under the *Strickland* test, prejudice will not be implied. * * * Without some affirmative demonstration that an enhanced version of the videotape shows a vehicle passing the bus, and without a definitive showing that the vehicle was positioned in Davis's lane

of travel prior to her veering off the roadway, it is speculative to assert that an enhanced video would have had any effect on the outcome of the proceeding. *State v. Davis,* 4th Dist. No. 04CA1, 2004-Ohio-5680, at ¶ 33. That is all we have here, speculation. We are speculating that the video might be able to be enhanced. We are speculating that if it is able to be enhanced it might be possible to get a better look at the driver. Finally, we speculate that if a better view of the driver is enhanced it might demonstrate that appellant was not the driver.

{¶ 27} Meanwhile, a jury weighed all the evidence that does exist, evidence that was disclosed and reviewed by appellant's counsel before trial, and determined that appellant was the driver who fled from the officer. There is no reason to overturn the jury's verdict based on mere speculation.