DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Michael Roper, appeals from the judgment of the Summit Court of Common Pleas that denied his motion for new trial. We affirm.
 I. {¶ 2} On May 11, 2000, Mr. Roper was indicted on one count of aggravated murder, in violation of R.C. 2903.01(B), with a death specification, pursuant to R.C. 2929.04(A)(7), and firearm specification pursuant to R.C. 2941.145; one count of aggravated robbery, in violation of R.C. 2911.01(A)(1)/(A)(3), with a firearm specification pursuant to R.C. 2941.145. Mr. Roper pled not guilty to the charges. On September 25, 2000, a jury trial was held, but the jury was unable to reach a verdict and the court declared a mistrial. On January 22, 2001 and May 25, 2001, a second and a third jury trial were held, both of which also resulted in mistrials.
 {¶ 3} After the fourth trial on September 17, 2001, a jury found Mr. Roper guilty of aggravated murder and the related firearm specification, and aggravated robbery with the firearm specification. The trial court sentenced Mr. Roper accordingly. Mr. Roper appealed his convictions to this Court, and we affirmed the convictions in a decision dated December 31, 2002. State v. Roper, 9th Dist. No. 20836, 2002-Ohio-7321.
 {¶ 4} On June 2, 2004, Mr. Roper filed a motion for leave to file a motion for new trial, a request for an evidentiary hearing on the motion, and a motion for an in camera inspection of documents. Mr. Roper also included a motion for new trial, along with a memorandum in support of the motion, with these filings. In the motions, Mr. Roper alleged that three police reports containing the names of other potential suspects were newly discovered evidence, and that he was not able to produce the reports within the 120-period prescribed for the filing of motions for new trial. See Crim. R. 33(B). Mr. Roper attached these three police reports to his motion, along with the affidavits of his trial attorneys which stated that the reports were not in the file when they conducted discovery, and an affidavit from an investigator who found the reports when reviewing the State's file.
 {¶ 5} On July 19, 2004, the State filed a response to the motions, as well as a supplement to the response, which contained the affidavits of two prosecutors stating that the police reports were in the State's file and were thus discoverable by the defense during open file discovery. On September 30, 2004, Mr. Roper filed a supplement to his original motion for leave to file the motion for new trial. On February 28, 2004, the trial court held a hearing on Mr. Roper's motion.
 {¶ 6} On January 15, 2005, the trial court granted Mr. Roper leave to file a motion for new trial, concluding that he was excusably unaware of the new evidence, i.e., police reports, and was unavoidably prevented from discovery of the reports within 120 days of the jury's verdict. The court considered the conflicting positions of both parties' counsel, and ultimately questioned whether Mr. Roper in fact could have learned of the reports, even using reasonable diligence.
 {¶ 7} In the same entry, the court denied Mr. Roper's motion for new trial, concluding that the exculpatory evidence presented by Mr. Roper in his motion did not warrant a new trial because he did not demonstrate that there was a "reasonable probability" that the evidence would change the result of the trial. The court applied a due process test to determine that the evidence was not material to the case and did not undermine the confidence in the outcome of the trial. It is from this order that Mr. Roper now appeals.
 {¶ 8} Mr. Roper timely appealed, asserting four assignments of error for review. We address assignments of error three and four together.
 II. A. First Assignment of Error
"THE TRIAL COURT ERRED IN FAILING TO PERMIT THE APPELLANT TO FILE A REVISED OR UPDATED MOTION FOR NEW TRIAL AS REQUIRED BY CRIM.R. 33(B), FOLLOWING ITS RULING THAT THE APPELLANT COULD NOT WITH REASONABLE DILIGENCE HAVE DISCOVERED AND PRODUCED THE NEW EVIDENCE MATERIAL TO DEFENSE AT TRIAL."
 {¶ 9} In his first assignment of error, Mr. Roper contends that the trial court erred when it refused to allow him to file a revised motion for new trial after it denied his original motion. Mr. Roper's contention is unfounded.
 {¶ 10} In the same order in which the trial court granted leave to file the delayed motion for new trial, the court denied his motion for new trial. This was so, because Mr. Roper had filed his motion for new trial simultaneously with his motion for leave.
 {¶ 11} Mr. Roper does not provide us with any pertinent citations to the record to support his argument. Upon our independent review of the record, we fail to see a reference to a request for leave by Mr. Roper to file a revised or updated motion for new trial. Mr. Roper initially filed a motion for leave to file a delayed motion for a new trial, a motion for a new trial, and a supplement to the motion for new trial. However, the transcript of the docket and journal entries does not reflect any such additional filing, or trial court entry reflecting a denial of a request to file a revised or updated motion. Thus, we find no basis in the record for this assignment of error, and therefore disregard the assignment of error. See App. R. 12(A)(2); Loc. R. 7(E). See, also, State v. Quiles
(Feb. 3, 1993), 9th Dist. No. 92CA005316, at *5.
 {¶ 12} Mr. Roper's first assignment of error is overruled.
 B. Second Assignment of Error
"THE TRIAL COURT ERRED IN NOT ORDERING THAT THE APPELLANT WAS ENTITLED TO A HEARING."
 {¶ 13} In his second assignment of error, Mr. Roper contends the trial court erred in not holding a hearing on his motion for new trial. Mr. Roper's contention lacks merit.
 {¶ 14} Initially, we observe that Mr. Roper asserts that he was entitled to a hearing on the motion for new trial, citing various authorities that discuss this right in the context of Ohio's post conviction statute, R.C. 2953.21. However, because Mr. Roper filed a motion for new trial pursuant to Crim. R. 33 and not R.C. 2953.21, these cases are distinguishable and therefore not applicable to the instant case.
 {¶ 15} A trial court's decision as to whether to hold a hearing on a Crim. R. 33 motion for new trial based upon newly discovered evidence is discretionary. State v. Smith (1986), 30 Ohio App.3d 138, 139; Statev. Cureton, 9th Dist. Nos. 03CA0009-M 03CA0010-M, 2003-Ohio-6010, at ¶ 32. Absent an abuse of discretion, this Court will not disturb such decision by the trial court. State v. Wooden (Sept. 29, 1999), 9th Dist. No. 19398, at *9. Thus, the challenger must show that the decision to not hold a hearing was unreasonable, arbitrary, or unconscionable. State v.Hill (Sept. 23, 1998), 9th Dist. No. 97CA006970, at *5, citing State v.Moreland (1990), 50 Ohio St.3d 58, 61.
 {¶ 16} In this case, the trial court correctly stated in its order that it was not required to hold an evidentiary hearing on the motion. See Crim. R. 47 57(B); Summit County Loc. R. 7.14(A); Wooden, at *9. The court had before it sufficient briefing from both parties regarding the motion for a new trial. Mr. Roper attached copies of the police reports, which were the underlying subject of the motion, to his motion. Neither the parties nor the court challenged the authenticity of these reports. Mr. Roper does not even begin to explain how the court's refusal to hold a hearing in this case was unreasonable, arbitrary, or unconscionable, let alone demonstrate what other information or evidence he would have presented at such a hearing. In light of the fact that the court already had before it sufficient information to support and oppose the motion, we cannot find that the court abused its discretion in determining that a hearing on the motion was not necessary.
 {¶ 17} Mr. Roper's second assignment of error is overruled.
 C. Third Assignment of Error
"THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR NEW TRIAL AND SPECIFICALLY ERRD IN UTLIZING THE STANDARD SET FORTH IN STATE V.PETRO (1947), 148 OHIO ST. 505, BECAUSE THE MATTER AT HAND INVOLVES A BRADY VIOLATION WHICH REQUIRES THAT THE ALDRIDGE STANDARD BE APPLIED."
 Fourth Assignment of Error
"ASSUMING ARGUENDO THAT THE TRIAL COURT USED THE CORRECT STANDARD IN DETERMINING WHETHER OR NOT THE APPELLANT IS ENTITLED TO A NEW TRIAL, THEN THE TRIAL COURT ERRED IN DENYING THE MOTION FOR NEW TRIAL BECAUSE THE APPELLANT PRESENTED SUFFICIENT EVIDENCE TO MEET THE SIX PRONGS SET FORTH IN STATE V. PETRO (1947), 148 OHIO ST. 505, SYLLABUS."
 {¶ 18} In his third assignment of error, Mr. Roper maintains that the trial court did not apply the appropriate case law in its disposition of his motion for new trial. In his fourth assignment of error, Mr. Roper argues that the trial court nevertheless erred in denying his motion for new trial if it is determined that the proper law was applied. We disagree on both counts.
 {¶ 19} In State v. Petro (1947), 148 Ohio St. 505, the Court provided that a party requesting a new trial based upon newly discovered evidence had to establish the following elements:
"To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." Id. at syllabus.
Mr. Roper maintains that the Ohio Supreme Court's decision in Petro
does not govern our analysis of a motion for new trial based upon newly discovered evidence. Mr. Roper insists that the decision in State v.Aldridge (1997), 120 Ohio App.3d 122, controls our analysis, instead.Aldridge is a First District Court of Appeals case that stated:
"[I]n order to establish a violation, the petitioner must demonstrate three elements: first, that the prosecution failed to disclose evidence upon request, second, that the evidence was favorable to the defense, and, third, that the evidence was material. See Moore v. Illinois
(1972), 408 U.S. 786, [795], 92 S. Ct. 2562, 33 L. Ed. 2d 706. Both exculpatory and impeachment evidence may be the subject of a Brady violation [pursuant to Brady v. Maryland (1963), 373 U.S. 83, 87,10 L.Ed.2d 215], so long as the evidence is `material.' United States v.Bagley (1985), 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481." Id. at 145.
Initially, we note that a decision of another district court is not controlling on this Court. See, e.g., State v. McGowan, 9th Dist. No. 03CA0033, 2004-Ohio-2367, at ¶ 13. However, the standard used inAldridge is essentially a restatement of the Brady standard and its progeny, infra, which ultimately governs the trial court's determination in this case, and which the court in fact applied.
 {¶ 20} We are not aware of any precedent that has overruled the Petro
standard. The Supreme Court has applied the Petro analysis even recently, and this Court has followed suit. See, e.g., State v. Lamar
(2002), 95 Ohio St.3d 181; State v. Robinson, 9th Dist. No. 04CA0066,2005-Ohio-2151, at ¶ 23; State v. Gilcreast, 9th Dist. No. 21533,2003-Ohio-7177, at ¶ 55. Subsequent case law has, however, interpreted the fifth Petro prong as follows:
"`While State v. Petro (1947), 148 Ohio St. 505, 36 O.O. 165,76 N.E.2d 370, stands for the proposition that newly discovered evidence that merely impeaches or contradicts other evidence is not enough to warrant the granting of a new trial, Petro does not establish a per se rule excluding newly discovered evidence as a basis for a new trial simply because that evidence is in the nature of impeaching or contradicting evidence. The test is whether the newly discovered evidence would create a strong probability of a different result at trial.'" Statev. Cureton, 9th Dist. Nos. 03CA0009-M 03CA0010-M, at ¶ 19, quotingDayton v. Martin (1987), 43 Ohio App.3d 87, syllabus.
We find that Mr. Roper's third assignment of error lacks merit.
 {¶ 21} Thus, we proceed to determine whether the trial court erred in denying Mr. Roper's motion for new trial. The disposition of a motion for a new trial based on newly discovered evidence is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. Smith, 30 Ohio App.3d at 139, citing State v. Williams
(1975), 43 Ohio St.2d 88, paragraph two of the syllabus. Abuse of discretion connotes more than simply an error in judgment; the court must act in an unreasonable, arbitrary, or unconscionable manner. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219. Notably, "a new trial is an extraordinary measure and should be granted only when the evidence presented weighs heavily in favor of the moving party." Gilcreast
at ¶ 54, citing State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 22} A defendant has a constitutional right of access to evidence.State v. South, 9th Dist. No. 22289, 2005-Ohio-2152, at ¶ 10, citingState v. Benson, 152 Ohio App.3d 495, 2003-Ohio-1944, at ¶ 10. InBrady v. Maryland (1963), 373 U.S. 83, 87, 10 L.Ed.2d 215, the United States Supreme Court held that the prosecution's suppression of evidence that is favorable to the defendant violates his due process rights if the evidence is material to guilt or punishment, regardless of the prosecution's intentions. See, also, State v. Johnston (1988),39 Ohio St.3d 48, 60. Evidence is "material" if there is a "reasonable probability," that, had the prosecution disclosed the evidence, the result of the trial would have been different. United States v. Bagley (1985),473 U.S. 667, 682, 87 L.Ed.2d 481. The United States Supreme Court has qualified this definition, stating that a "reasonable probability" of a different trial result is demonstrated by showing that the prosecution's suppression of the evidence "undermine[d] the confidence in the outcome of the trial," Kyles v. Whitley (1995), 514 U.S. 419, 434, 131 L.Ed.2d 490, citing Bagley, 473 U.S. at 678; State v. Johnston, 39 Ohio St.3d 48, paragraph five of the syllabus.
 {¶ 23} It is important to note, however, that a mere possibility that undisclosed evidence might have helped the defense or might have changed
the trial outcome is insufficient to establish "materiality" under theBrady standard. United States v. Agurs (1976), 427 U.S. 97, 109-110,49 L.Ed.2d 342, overruled in part on other grounds. A reversal is not warranted when a mere "combing of the prosecutors' files after the trial disclosed evidence possibly useful to the defense but not likely to have changed the verdict." Giglio v. United States (1972), 405 U.S. 150, 154,31 L.Ed.2d 104. Ultimately, the relevant question becomes whether in the absence of the evidence, the defendant received a fair trial, "understood as a trial resulting in a verdict worthy of confidence." Kyles,514 U.S. at 434.
 {¶ 24} In the instant case, Mr. Roper argues that the police reports contained information regarding three potential alternative suspects, one of whom appeared to resemble Mr. Roper. In a police report prepared by Akron Police Department Detective R. McFarland, McFarland documented his conversation with another detective who had received information from a source. This source had asserted that Mr. Roper was not the shooter, and named an individual, L.T., as the person who actually shot the victim. The source had informed the detective that L.T. looked very similar to Mr. Roper, and recounted L.T.'s violent history. However, the report does not indicate that the police ever located or interviewed L.T.; the only follow-up consisted of speaking to other individuals who knew L.T.
 {¶ 25} Another police report prepared by Detective McFarland indicated that an information source had stated that the day of the murder, he had seen a black male, M.D., running towards him from the direction of the store where the crime occurred. The source did note that he did not like M.D. and that the two had had some confrontations. The police interviewed M.D., his friend, and his brother regarding M.D.'s whereabouts at the time in question. The murder had occurred sometime around 10:00 a.m., but M.D. asserted that he awoke at 11:00 a.m. the morning of the murder. M.D.'s brother added that M.D. was at home around 11:00 a.m. eating a bowl of cereal.
 {¶ 26} The third report recounted a statement made by an information source who had been an inmate at the Summit County Jail. The source reported that while he was being held in a holding room, he overheard another individual in the room state that he suspected that an individual called "three-fingered Jeff" was responsible for killing someone, because the day of the murder "three-fingered Jeff" came running up to this individual and said that he had to get out of the area because he had just "done someone." The information source, who was sentenced to a six-month treatment at a mental health facility before coming back for trial for an aggravated robbery charge, did not know who this individual was. However, the report does not indicate this individual was located or interviewed, and does not provide any information on the actual identity of this "three-fingered Jeff."
 {¶ 27} In its judgment, the trial court applied the due process test and followed the appropriate case law, concluding that there was not a reasonable probability, that, had the evidence been disclosed, the result of the trial would have been different, and that the absence of the police reports did not undermine the confidence in the jury verdict. Mr. Roper claims that these reports "would have certainly been favorable and material to [his] claim of innocence and would have absolutely aided in his defense theories of alibi and mistaken identity presented at trial." However, the court noted in its judgment that it was not enough that the evidence might have helped the defense. The court concluded that the reports "fail to successfully attack the evidence form the State's witnesses at trial," observing that the reports contained merely unsubstantiated allegations regarding other potential suspects. Specifically, the court further stated:
"it is quite unlikely that the alternative suspect theory would change the result if a new trial is granted. While the alternative suspect theory would, at best, be used to attempt to impeach or contradict the testimony from the three above individuals, the success of such endeavor seems dubious. Although a defense attorney whose client has been convicted might litigate differently if given a second chance, such hindsight does not necessarily mean that the original jury verdict is unreliable or unworthy of confidence."
In our decision affirming Mr. Roper's conviction, we acknowledged that both eyewitnesses, the wife and daughter of the victim, identified Mr. Roper as the assailant, and no one else, and that these identifications were corroborated by the physical evidence presented at trial. State v.Roper, 9th Dist. No. 20836, 2002-Ohio-7321, at ¶ 69.
 {¶ 28} Based upon the foregoing, we find that Mr. Roper has failed to establish a reasonable probability that nondisclosure of the police reports sufficiently undermined confidence in the outcome of the proceedings. Consequently, we find that Mr. Roper has failed to demonstrate the materiality of the reports to the charges of which he was convicted. See Kyles, 514 U.S. at 434; Bagley, 473 U.S. at 682. Thus, we conclude that the trial court did not abuse its discretion in denying Mr. Roper's motion for new trial. Petro, 148 Ohio St. at syllabus;Martin, 43 Ohio App.3d at syllabus; Brady, 373 U.S. at 87; Kyles,514 U.S. at 434.
 {¶ 29} Mr. Roper's third and fourth assignments of error are overruled.
 III. {¶ 30} Mr. Roper's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J. Whitmore, J. concur.