[Cite as *State v. Turner*, 2025-Ohio-892.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2024-P-0044** |
| Plaintiff-Appellant, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| JACOB D. TURNER, | |
| Defendant-Appellee. | Trial Court No. 2023 CR 00748 |

## O P I N I O N

Decided: March 17, 2025
Judgment: Affirmed

*Connie J. Lewandowski*, Portage County Prosecutor, and *Theresa M. Scahill*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*John P. Lazcko*, Portage County Public Defender, and *Alonda Ann Bush* and *Alan Ellis*, Assistant Public Defenders, 209 South Chestnut Street, Suite 400, Ravenna, OH 44266 (For Defendant-Appellee).

EUGENE A. LUCCI, J.

{¶1} Appellant, the State of Ohio, appeals the judgment of the Portage County Court of Common Pleas dismissing the indictment charging appellee, Jacob D. Turner, with Aggravated Possession of Drugs, a fifth-degree felony, due to pre-indictment delay in bringing the charges. We affirm the judgment of the trial court.

{¶2} On January 11, 2021, Turner was stopped by an Ohio State Trooper. There were three other individuals in the vehicle. According to the motion to dismiss, the trooper detected the scent of marijuana in the vehicle and requested backup to assist in a search. The vehicle's occupants were removed from the vehicle. According to the State, various

alleged illegal substances were recovered, including suspected methamphetamine purportedly located in Turner's wallet.[1]

{¶3}  After collecting the substances, they were sent to Ohio's Bureau of Criminal Investigation ("BCI") for analysis. The test results for the substance allegedly found in Turner's wallet came back positive for methamphetamine on July 10, 2021. Test results relating to other substances found in the vehicle, however, remained pending. On July 7, 2023, over two and one-half years after the stop and nearly two years after results were received, Turner was indicted on one count of Aggravated Possession of Drugs, in violation of R.C. 2925.11, a felony of the fifth degree.

{¶4}  Turner moved to dismiss the charge based upon preindictment delay. The trial court held a hearing on the motion wherein Turner argued the court should dismiss the case because: (1) the dash-camera video evidence of the stop and search was destroyed to his prejudice, and thus Turner could not evaluate the basis for the stop or assess how officers addressed the occupants of the vehicle; (2) at least one of the troopers might be unavailable to testify due to his relocation to a different post; (3) he was prejudiced by the destruction of the video, as he was unable to challenge the location and/or possession of the substance which formed the basis of the charge; and (4) the State failed to offer a justifiable reason for the delay in utilizing the alleged results, submitted to the State on July 10, 2021, as a basis for the grand jury's indictment.

{¶5}  The trial court took the matter under advisement and later issued a judgment granting Turner's motion.  The trial court determined:

> The indictment in the above case stems from a January 11,
> 2021 traffic stop. The suspected methamphetamine was

---

1. It is not clear where in the vehicle Turner's wallet was located.

2

Case No. 2024-P-0044

submitted for testing by OSP on January 21, 2021. Lab results confirmed the presence of meth on July 10, 2021. Defendant was indicted July 7, 2023, for possession of methamphetamine, approximately two and a half years after the offense. A warrant was issued for defendant on the indictment July 7, 2023. The Court determined that he had been in custody of the Ohio Department of Corrections since October 11, 2022 and scheduled his arraignment via video for February 14, 2024. Clearly no efforts were made by the state to locate the defendant to serve the warrant as he was incarcerated at the time of the indictment was issued. During the delay in prosecution of this case, the video of the traffic stop was destroyed and one of the arresting officers was no longer available.

{¶6} The trial court additionally found that "[t]he arguments made by the State do not justify the delay. Further, although one of the officers is available, the inability of the defense to view the video that could provide exculpatory evidence causes actual prejudice."

{¶7} The State appeals the judgment pursuant to R.C. 2945.67(A), which permits the prosecution to appeal the dismissal of an indictment. The State assigns the following single error for our review:

{¶8} "The trial court erred by dismissing the indictment against Mr. Turner."

{¶9} "In reviewing a trial court's decision on a motion to dismiss for preindictment delay, this court applies a de novo standard of review to the legal issues, but we afford great deference to the trial court's findings of fact." (Citations omitted.) *State v. Lynch*, 2018-Ohio-1078, ¶ 20 (8th Dist.). *See also State v. Bruce*, 2018-Ohio-1980, ¶ 10 (11th Dist.)

{¶10} "[W]hen unjustifiable preindictment delay causes actual prejudice to a defendant's right to a fair trial despite the state's initiation of prosecution within the statutorily defined limitations period, the Due Process Clause affords the defendant

3

additional protection." *State v. Jones*, 2016-Ohio-5105, ¶ 11, citing *United States v. Lovasco*, 431 U.S. 783, 789 (1977). In *Jones,* the Supreme Court of Ohio clarified that "preindictment delay violates due process only when it is unjustifiable and causes actual prejudice . . . . " *Jones* at ¶ 12. "Once a defendant presents evidence of actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for delay." *Id.* at ¶ 13, citing *State v. Whiting,* 84 Ohio St.3d 215, 217, 1998-Ohio-575. If the defendant fails to show actual prejudice, the State need not present evidence justifying the delay in the case. *See Jones* at ¶ 16.

{¶11} "To demonstrate prejudice, appellant 'must point quite specifically to how [he] was prejudiced, and the defendant's showing must be concrete, not speculative.'" *State v. Ware*, 2008-Ohio-3992, ¶ 19 (11th Dist.), quoting *United States v. Doerr*, 886 F.2d 944, 964 (7th Cir. 1989); *see also State v. Owens*, 2015-Ohio-3881, ¶ 4 (8th Dist.) ("[T]his court has made it clear that speculation does not show actual prejudice.").

{¶12} In *State v. Luck*, 15 Ohio St.3d 150, 157 (1984), the Supreme Court of Ohio found actual prejudice due to the death or faded memory of key witnesses and the loss of evidence. The Court, however, has clarified that "the *possibility* of faded memories, inaccessible witnesses, and lost evidence is insufficient to demonstrate actual prejudice." (Emphasis added.) *Jones* at ¶ 27. Thus, mere possibilities do not prove actual prejudice. Instead, "the defendant must demonstrate the exculpatory value of the evidence of which he was deprived due to the delay." *State v. Thomas,* 2015-Ohio-415, ¶ 11 (8th Dist.).

{¶13} The defendant must accordingly show "how lost witnesses and physical evidence would have proven the defendant's asserted defense." *State v. Smith*, 2014-Ohio-3034, ¶ 26 (8th Dist.), citing *State v. Davis,* 2007-Ohio-7216, ¶ 17 (7th Dist.)

4

("[W]ithout proof of prejudice, meaning something which adversely affects [a defendant's] ability to defend himself at trial, there is no due process violation for preindictment delay in prosecution.").

{¶14} The State takes issue with the trial court's analysis, claiming the court failed to find Turner experienced actual prejudice; instead, it maintains the trial court simply concluded the delay in indictment was unjustifiable and therefore Turner was entitled to relief. We do not agree.

{¶15} In its judgment entry, the trial court specifically determined "the inability of the defense to view a video that could provide exculpatory evidence causes actual prejudice." Although the trial court did not significantly elaborate on this point, this does not imply its conclusion is erroneous.

{¶16} In this matter, Turner was charged with an offense that occurred on January 11, 2021. The State has been aware of Turner's alleged offense and the potential charges since that date. Moreover, and significantly, the State has been aware of the positive lab results since July 10, 2021. There is nothing to suggest the footage of the stop was destroyed prior to this date. Turner, however, was not indicted until July 7, 2023.

{¶17} Turner's argument is primarily premised upon the lack of the dash-cam video which would elucidate the initial purpose of the stop. Without the video, Turner argues he lacks the ability to challenge whether the stop was supported by probable cause or reasonable suspicion. Moreover, even though the stopping/arresting officer is competent to testify to his observations, those observations, without the video, merely represent the trooper's ipse dixit assurance that the stop was constitutional.

5

{¶18} Furthermore, even though the record indicates an illicit substance was found in Turner's wallet, he argues he is unable to substantiate his position that no illegal substance can be attributable to him. Again, the arresting troopers can testify to what was found, but, without some ability to visualize the location of the occupants and the location of the wallet, Turner maintains he is unable to effectively substantiate his claim that he was not in possession of the substance at issue.

{¶19} The State argues the foregoing arguments are purely speculative. Of course, without the video, it stands to reason that Turner's position is somewhat speculative; this, however, does not imply the argument is merely possible. After all, in most, if not, all cases of stops and searches of a motorist, the foundation for motions to suppress is the validity of the initial stop. The video would have therefore aided and maybe even established Turner's asserted defense(s).

{¶20} In *State v. South*, 2005-Ohio-2152, (9th Dist.), the lead author emphasized the difficulty of establishing actual prejudice where video evidence of a stop is withheld or, as in this case, destroyed. The lead opinion irreverently, if not amusingly, observed:

> The state contends that even if its refusal to provide the videotape was noncompliant with Crim.R. 16, South has still failed to show that he was prejudiced by the refusal–as he offers only speculation and cannot demonstrate that the tape would have proven his innocence. After our initial bewilderment, we question whether the state is facetious in advancing this Alice-in-Wonderland argument. The tautology is too obvious: the defendant has not justified his right to a copy of the videotape upon which he might experiment in search of exculpatory evidence because he has not already proven that the experiment would produce exculpatory evidence. This argument proves nothing but that the defendant has conducted no experiment on a tape he does not have. The repetitive and circular invective is dizzying.

6

Thus, we are reminded of Alice's tumble down the rabbit hole, and the point at which she observed the Knave of Hearts standing trial for theft of the Queen's tarts. Much to his dismay, the Knave was similarly unable to disprove accusations that he had authored an allegedly incriminating letter:

"There's more evidence to come yet, please your Majesty," said the White Rabbit, jumping up in a great hurry; "this paper has just been picked up."

"What's in it?" said the Queen.

"I haven't opened it yet," said the White Rabbit, "but it seems to be a letter, written by the prisoner to–to somebody."

"It must have been that," said the King, "unless it was written to nobody, which isn't usual, you know."

"Who is it directed to?" said one of the jurymen.

"It isn't directed at all," said the White Rabbit; "in fact, there's nothing written on the *outside.*" He unfolded the paper as he spoke, and added "It isn't a letter, after all: it's a set of verses."

"Are they in the prisoner's handwriting?" asked another of the jurymen.

"No, they're not," said the White Rabbit, "and that's the queerest thing about it." (The jury all looked puzzled.)

"He must have imitated somebody else's hand," said the King. (The jury all brightened up again.)

"Please your Majesty," said the Knave, "I didn't write it, and they can't prove I did: there's no name signed at the end."

"If you didn't sign it," said the King, "that only makes the matter worse. You MUST have meant some mischief, or else you'd have signed your name like an honest man."

Lewis Carroll, Alice's Adventures in Wonderland (1866; 1928 Ed.).

Accordingly, if [the defendant] cannot prove that he was not the driver of the car, then he has no right to demand evidence with which he might prove that he was not the driver. This is

Case No. 2024-P-0044

patently absurd. See, e.g., *Crawford v. Washington* [541 U.S. 36, 62, (2004)] ("Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty").

*South*, 2005-Ohio-2152, at ¶ 13-14.

{¶21} Turner acknowledges he cannot offer more specific detail of potential issues the video might show without being able to properly examine its contents. He does not, however, merely assert there is no dash-cam video; he points to specific evidentiary issues created by the loss of the evidence. Turner clarified his intention to challenge the legality of the stop, the search, the presence of illicit substances, the location of the substance at the foundation of his charge, and the issue of possession/constructive possession considering the three additional occupants in the vehicle. Under the circumstances, we conclude Turner has established sufficient basis to conclude he suffered actual prejudice by the delay during which time the crucial video evidence was destroyed. Our analysis, however, does not end here. We must next determine whether the delay was justified.

{¶22} Once a defendant has established actual prejudice, the State must produce evidence of a justifiable reason for delay in the commencement of prosecution. *State v. Walls,* 2002-Ohio-5059, ¶ 51. A delay can be found to be unjustifiable

> when the state's reason for the delay is to intentionally gain a tactical advantage over the defendant, *see United States v. Marion,* [404 U.S. 307, 324 (1971)], *or when the state, through negligence or error in judgment, effectively ceases the active investigation of a case, but later decides to commence prosecution upon the same evidence that was available to it at the time that its active investigation was ceased.*

(Emphasis added.) *Luck,* 15 Ohio St.3d at 158.

{¶23} At the hearing on Turner's motion, the prosecutor argued:

8

Case No. 2024-P-0044

It's my understanding that it's OSP's procedure and policy, as I spoke with Trooper Secola [sic] about this prior, that whenever there are multiple potential defendants and there are multiple different drugs that can go to several different defendants, it's their policy that they wait until all results are back before they send everything to a prosecutor's office to then charge everyone in one clean package. Looks like they're waiting for several different updates, as the one codefendant['s] THC cartridge ended up being tested by BCI. It's not my understanding whether or not those came back, but, again, I can only speak up until August 2022 as to that part of the delay and I'm uncertain as to what happened between August and March of 2023, before our office responded back to them and then the indictment coming in July of 2023.

But, again, I believe our position is no actual prejudice that could cause a pre-indictment delay dismissal as the trooper is still able to come in and testify and he does recall the incident after I spoke with him as well.

{¶24} The State appears to rely upon the departmental policy of the Ohio State Patrol for the delay in Turner's indictment. The record, however, reflects the test results that are the basis for Turner's charge were returned by BCI on July 10, 2021. The trial court questioned whether the arresting trooper had provided updates to the prosecutor's office on the case's progress. The prosecutor responded that the trooper had provided "updates in his report" including the results which were received on July 10, 2021.

{¶25} It is unclear what the effect or substance of the "updates" were. Still, the record reflects the results were available seven months after the arrest but the indictment was not filed until July 7, 2023, nearly two years after the results were received from BCI. In our view, the Ohio State Patrol's policy is not dispositive of the justifiability of the delay. This is especially true where it would appear no additional charges against any of the

9

Case No. 2024-P-0044

vehicle's other three occupants were filed.[2] Under the circumstances, whether through negligence or error in judgment, the arresting officer and the prosecutor ceased active investigation in the case against Turner on July 10, 2021; it later decided to indict him (based upon the evidence that was confirmed on July 10, 2021) on July 7, 2023. The evidence was available at the time the "active investigation" ceased. We therefore conclude, pursuant to *Luck*, 15 Ohio St.3d at 158, the delay in filing Turner's indictment was not justified.

{¶26} One final point requires attention. The State points out that the trial court improperly concluded that one of the troopers on the scene was unavailable. We agree with the State on this point. The record indicates that the trooper in question was working out of different barracks but was still employed by the Ohio State Patrol and thus ostensibly available. Nevertheless, because the primary basis of the trial court's decision regarding actual prejudice was the destruction of the video, and we hold this basis was sufficient for Turner to establish actual prejudice, any error regarding the trooper's alleged unavailability is harmless.

{¶27} The State's assignment of error lacks merit.

{¶28} The judgment of the trial court is affirmed.


JOHN J. EKLUND, J.,

SCOTT LYNCH, J.,

concur.

---

2. During the hearing on Turner's motion, defense counsel, the trial court, and the prosecutor agreed none of the other occupants of the vehicle were charged.

Case No. 2024-P-0044