OPINION
{¶ 1} On June 13, 2007, appellant, Charles H. Ware, III, appeared before the Lake County Court of Common Pleas and pleaded guilty to charges of rape, burglary, and felonious assault. Because his crimes were committed prior to July 1, 1996, appellant was sentenced pursuant to the pre-Senate Bill 2 felony sentencing scheme to an indefinite, aggregate term of 21 to 55 years imprisonment. He now appeals from the *Page 2 
trial court's judgment denying his motion to dismiss his indictment and judgment on sentence. For the reasons discussed below, we affirm.
 {¶ 2} Information gleaned from the Affidavit of Fact in Support of Complaint indicate that on June 11, 1995, at approximately 5:00 a.m., Willoughby police officers responded to a 911 call reporting a rape. The victim stated that an unknown white male had entered her home while she was asleep. She awoke with her attacker on top of her brandishing a knife. He warned her to "shut up or [her] daughter [would] get it." She called out for her daughter, who was sleeping in a room adjacent to the victim's, at which time her attacker slashed the victim's right hand with the knife. After raping the victim, the intruder left the home. The victim fled to a neighbor's house to call 911.
 {¶ 3} The victim was taken to the emergency room and, after police arrived, she provided a statement. During her discussion with police, the victim indicated her assailant was a white male in his late teens to mid-twenties and possibly of Italian descent. He was approximately 5'8" tall, medium build, dark eyes and dark hair. The victim further stated her attacker's appearance reminded her of her daughter's ex-boyfriend who she knew only as "Chuckie." The victim's daughter was asked about Chuckie and police subsequently learned the individual's full name was Charles H. Ware III. From this information, the police obtained appellant's social security number, date of birth, and address.
 {¶ 4} Notwithstanding the foregoing biographical details, appellant was not identified as the perpetrator of the 1995 crimes until DNA and fingerprint evidence confirmed his identity in 2007. Appellant was consequently indicted on April 9, 2007 on *Page 3 
one count of rape, an aggravated felony of the first degree, one count of burglary, an aggravated felony of the second degree, one count of kidnapping, an aggravated felony of the first degree, and two counts of felonious assault, each aggravated felonies of the second degree. On April 11, 2007, a warrant on the indictment was issued to the Lake County Sheriff and appellant was arrested on the same day.
 {¶ 5} On April 13, 2007, appellant was arraigned and pleaded "not guilty" to all charges. A jury trial was scheduled for June 12, 2007. On June 7, 2007, appellant moved the trial court to continue the trial and also moved for leave to file a motion to dismiss. After granting appellant leave, a motion to dismiss was filed on June 12, 2007 in which he argued the state's delay in indicting him violated his constitutional rights to due process and a speedy trial. After a hearing on the motion, the trial court denied the same. Appellant subsequently entered a written plea of guilty to the rape, burglary, and felonious assault charges. The trial court entered a nolle prosequi on the remaining charges. Appellant was then referred to the Adult Probation Department for a pre-sentence investigation report and a psychological evaluation. Victim impact statements were also ordered.
 {¶ 6} On August 8, 2007, appellant was sentenced to an indefinite term of imprisonment for a minimum of 10 years and a maximum of 25 years on the rape count; a minimum of 8 years and a maximum of 15 years on the burglary count; and a minimum of 3 years and a maximum of 15 years on the felonious assault count. The terms were ordered to be served consecutively to one another for a total prison term of *Page 4 
21 to 55 years. Appellant now appeals and asserts two assignments of error for our review.
 {¶ 7} Appellant's first assignment of error reads:
 {¶ 8} "The trial court erred in denying defendant-appellant's motion to dismiss filed prior to trial, as the sentence imposed is contrary to law." (sic.)
 {¶ 9} Under his first assignment of error, appellant argues the trial court violated his constitutional rights to due process and a speedy trial in denying his motion to dismiss the indictment which was filed some 12 years subsequent to the commission of the crimes charged.
 {¶ 10} First, appellant entered a plea of guilty to the charges of which he was convicted and ultimately sentenced. By pleading guilty, appellant waived his right to challenge the trial court's ruling on his motion to dismiss. State v. Yodice, 11th Dist. No. 2001-L-155, 2002-Ohio-7344, at ¶ 27. A plea of guilty "`represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense[s] with which he is charged, * * * he may only attack the voluntary and intelligent character of the guilty pleas * * *.'" State v. Spates, 64 Ohio St.3d 269, 272, 1992-Ohio-130, quotingTollett v. Henderson (1973), 411 U.S. 258, 267. Once a trial court accepts a defendant's plea of guilty, the defendant waives any
deprivation of his or her constitutional rights which occurred prior to the entry of the guilty plea, including any alleged error concerning the indictment. Yodice, supra; see, also, State v. Swift (Nov. 9, 1995), 11th Dist. No. 94-G-1838, 1995 Ohio App. LEXIS 5024, *6. *Page 5 
 {¶ 11} Here, appellant moved the court to dismiss the indictment based upon two alleged constitutional violations, i.e., a speedy trial violation and a due process violation. After the trial court denied the motion, appellant chose to enter a plea of guilty. In doing so, appellant waived his right to challenge the propriety of the trial court's decision relating to his motion to dismiss on appeal. Instead, appellant can only raise the issue of the denial of his motion to dismiss as it might relate to the question of the constitutional propriety of his guilty plea. He does not, however, argue that the trial court's decision on his motion to dismiss affected the knowing and voluntary character of his plea. Therefore, he does not raise an argument upon which a reversal of his conviction could be properly based. Accordingly, appellant's first assignment of error must be overruled.
 {¶ 12} Assuming, for the sake of argument, appellant did not waive this issue as a result of his plea of guilty, his position would nevertheless lack merit. Specifically, appellant supports his position that the preindictment delay denied him due process as well as his speedy trial rights, appellant cites the Ohio Supreme Court's decision in State v. Meeker (1971), 26 Ohio St.2d 9. For the reasons that follow, we hold Meeker is inapplicable to appellant's situation.
 {¶ 13} Although Meeker opened the door to constitutional speedy trial challenges relating to preindictment delays, significant authority, both federal and state, has virtually abrogated its practical application.[1] Specifically, a mere 9 months after Meeker *Page 6 
was decided, the United States Supreme Court held there are no speedy trial rights regarding preindictment delays under the federal constitution. United States v. Marion (1972), 404 U.S. 307. InMarion, the Court held that the speedy trial guarantee of the Sixth Amendment "is clearly limited to post-arrest situations" and declined to extend its protections to the period prior to arrest. Id. at 319. The Court reasoned:
 {¶ 14} "The law has provided other mechanisms to guard against possible as distinguished from actual prejudice resulting from the passage of time between crime and arrest or charge. As we said inUnited States v. Ewell [(1965), 383 U.S. 116, 122], `the applicable statute of limitations [* * *] is [* * *] the primary guarantee against bringing overly stale criminal charges.' Such statutes represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice; they `are made for the repose of society and protection of those who may [during the limitation * * *] have lost their means of defence.' Public Schools v. Walker
[(1870)], 9 Wall. 282, 288 * * *. These statutes provide predictability by specifying a limit beyond which there is an irrebutable presumption that a defendant's right to a fair trial would be prejudiced."Marion, supra, at 322.[2]
 {¶ 15} Because Marion was a later case and Ohio's speedy trial jurisprudence tends to follow speedy trial law in federal courts,Meeker's authority was substantially *Page 7 
undermined almost immediately after it was issued. State v. Davis, 7th Dist. No. 05 MA 235, 2007-Ohio-7216, at ¶ 25.
 {¶ 16} Moreover, in State v. Luck (1984), 15 Ohio St.3d 150, the Ohio Supreme Court explicitly limited the application of Meeker to "cases that are factually similar to it." Luck, supra, at 153. In so holding, the Court determined that a defendant may only assert preindictment speedy trial rights if the state has actually initiated an official criminal prosecution prior to the indictment. Thus, althoughMeeker has not been completely overruled, it has no applicability to cases which do not possess a similar factual make-up. It is clear that the underlying facts of the appellant's case are not factually similar to those in Meeker.
 {¶ 17} In Meeker, the defendant engaged in conduct in 1963 which legally constituted four separate crimes. Later that year, the defendant was indicted on one of the four potential charges. The defendant pleaded guilty to a lesser charge, was convicted, and sentenced. In a postconviction petition, the defendant attempted to withdraw his plea. In 1969, the defendant was successful and his conviction was vacated and remanded. Subsequently, the state added three new charges to the indictment based upon the same criminal conduct occurring in 1963 which gave rise to the original armed robbery charge. These additional charges were challenged on speedy trial grounds. The Court held the defendant's right to a speedy trial was violated because his initial indictment encompassed the same events that were the foundation of his second indictment. Further, the delay in commencing prosecution for the offenses *Page 8 
set forth in the second indictment occurred after the defendant had already been indicted for an offense stemming from the same sequence of events.
 {¶ 18} The facts before this court are in no way similar to those inMeeker. Here, appellant was not initially prosecuted for one crime and, years later, indicted on additional charges based upon the same criminal occurrence. To the contrary, appellant was neither specifically investigated nor officially charged with any crime until he was indicted in 2007. Although it is not entirely clear why it took the state 12 years to indict appellant for the underlying criminal conduct (especially given the information available at the time the crime was reported), the delay may not be viewed as a violation of appellant's right to a speedy trial. Appellant's reliance on Meeker is misplaced.
 {¶ 19} As appellant's speedy trial argument lacks merit, we shall review the alleged error for a due process violation. The Supreme Court of Ohio has held that a dismissal based upon a preindictment delay is warranted only where a defendant presents evidence establishing substantial prejudice. State v. Walls, 96 Ohio St.3d 437, 452,2002-Ohio-5059; see, also, Luck, supra, paragraph two of the syllabus. To demonstrate prejudice, appellant "must point quite specifically to how [he] was prejudiced, and the defendant's showing must be concrete, not speculative." United States v. Doerr (C.A. 7, 1989), 886 F.2d 944,964. "The determination of `actual prejudice' involves `a delicate judgment based on the circumstances of each case.'" *Page 9 
 Wells, supra, at 453, quoting Marion, supra, at 325.[3] In conducting this analysis, "courts are to consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay." Walls, supra, citing Luck, supra, at 154, citing Marion, supra, at 326.
 {¶ 20} In an attempt to establish actual prejudice, appellant cites this court's holding in State v. Nieves, 11th Dist. No. 2007-A-0039,2008-Ohio-534, for the proposition he is entitled to a presumption of prejudice relating to the delay in prosecution. Appellant's reliance onNieves is inappropriate. In that case, this court pointed out that "`courts have generally found post-accusation delay "presumptively prejudicial" at least as it approaches one year.'" Id. at ¶ 24, quotingState v. Selvage, 80 Ohio St.3d 465, 470, 1997-Ohio-287. As just discussed, the delay in this case was preindictment, not "post-accusation." There is no presumption of prejudice in a preindictment delay case.
 {¶ 21} Without the benefit of a presumption of prejudice, appellant was required to affirmatively demonstrate actual prejudice, which, as at least one court has acknowledged, "is difficult to prove."Doerr, supra. Nevertheless, appellant asserts he was actually prejudiced by the delay because, since the commission of the crimes (1) a "critical witness" has died and (2) "important evidence" has been allegedly lost. The critical witness was the officer who lifted appellant's fingerprints from the victim's home subsequent to the crime. The lost evidence includes the window from which the prints *Page 10 
were lifted and "important police reports." With respect to the unavailability of a witness, the court in Doerr, supra, observed:
 {¶ 22} "`A defendant must do more than allege that a particular witness is no longer available and that the witness's testimony would have helped the defense.' United States v. Antonino (C.A. 7, 1987),830 F.2d 798, 805. Moreover, we shall only conclude that the death of a witness had prejudiced a defendant where we are `"convinced that [the witness] would have testified, that the testimony would have withstood cross-examination, and that the jury would have found [him] a credible witness."' United States v. Valona (C.A. 7, 1987), 834 F.2d 1334, 1339
* * * Further, even if we are convinced that an absent witness would have been a credible witness for the defendant, `we must still evaluate this testimony against the other trial evidence to determine if indeed its introduction would affect the trial outcome.' Id." Doerr, supra.
 {¶ 23} Here, there is no specific evidence of spoliation in this case and appellant's DNA as well as his fingerprints directly linked him to the crime. Moreover, the victim was able to positively identify appellant as her assailant (the victim told investigators her attacker resembled her daughter's ex-boyfriend "Chuckie."). Even if the officer in question was still available and appellant went to trial, we do not see how his testimony would have meaningfully affected the outcome of the case.
 {¶ 24} With respect to the alleged "lost evidence," appellant fails to specifically indicate how the window or the claimed missing reports would have impacted his defense. He merely makes the vague and conclusory assertions that "important police reports are missing" and thus he has suffered actual prejudice. Appellant's open-ended *Page 11 
claims are speculative at best. Although there was a 12 year period between the crime appellant committed and his indictment on the same, we hold appellant has failed to establish actual prejudice.
 {¶ 25} In sum, we hold appellant's plea of guilty to the crimes waived any issue relating to preindictment delay on appeal. However, even if the issue had been preserved for appellate review, he is unable to establish actual prejudice and his arguments would still fail. We therefore conclude appellant's first assignment of error is without merit.
 {¶ 26} Appellant's second assignment of error states:
 {¶ 27} "The trial judge abused his discretion when sentencing appellant to an excessively long sentence, failing to take into consideration the totality of the circumstances, to the prejudice of defendant, and based on factors not supported by the record."
 {¶ 28} Under his second assignment of error, appellant argues the trial court abused its discretion in sentencing him to an excessively long term of imprisonment. Appellant specifically asserts the sentence was greatly disproportionate to the crime; the trial court failed to consider all of the statutory sentencing factors; and, the court's comments are not supported by the record.
 {¶ 29} Because the crimes of which appellant was convicted were committed prior to July 1, 1996, the effective date of Senate Bill 2, the pre-Senate Bill 2 sentencing scheme controlled the trial court's imposition of sentence. State v. Rush, 83 Ohio St.3d 53, 1998-Ohio-423, paragraph two of the syllabus. Pursuant to pre-Senate Bill 2 *Page 12 
sentencing law, a trial court has broad discretion to impose a felony sentence and that sentence will not be reversed unless it is statutorily incorrect or the trial court erred in failing to consider the statutory sentencing factors. See, e.g., State v. Perkins (1994),93 Ohio App.3d 672, 684-685. Thus, a sentence will not be reversed absent an abuse of discretion. Id.
 {¶ 30} Appellant pleaded guilty to one count of rape, an aggravated felony of the first degree; one count of burglary, an aggravated felony of the second degree, and one count of felonious assault, an aggravated felony of the second degree. Pursuant to former R.C. 2929.11(B)(1)(a), the minimum terms available to a court for a defendant convicted of an aggravated felony of the first degree are "five, six, seven, eight, nine, or ten years, and the maximum term shall be twenty-five years[.]" Further, pursuant to former R.C. 2929.11(B)(2)(a), the minimum terms available to a court for a defendant convicted of an aggravate felony of the second degree are "three, four, five, six, seven, or eight years, and the maximum term shall be fifteen years[.]" The trial court sentenced appellant to an indeterminate sentence of ten to twenty-five years on the rape count. On the burglary count, appellant was sentenced to an indeterminate term of eight to fifteen years. With respect to the felonious assault count, appellant was sentenced to an indeterminate term of three to fifteen years. All sentences were ordered to run consecutively.
 {¶ 31} A review of the relevant statutory law and the record of the proceedings demonstrate the foregoing sentences were within the statutory range available to the trial court. Under pre-Senate Bill 2 felony sentencing law, "it [was] well established that *Page 13 
a trial court generally does not abuse its discretion when it sentences a defendant within the statutory guidelines." State v. Hermison (May 26, 1995), 11th Dist. No. 93-T-4930, 1995 Ohio App. LEXIS 2210, *19-*20, citing Toledo v. Reasonover (1965), 5 Ohio St.2d 22, paragraph one of the syllabus. Given the general nature of the rule, we shall next review the remaining aspects of the trial judge's decision to ensure it was neither arbitrary nor unreasonable.
 {¶ 32} Under former R.C. 2929.12, a trial court's discretion is guided, but not limited, by consideration of various statutory aggravating and mitigating factors. That statute provides, in relevant part:
 {¶ 33} "(B) The following do not control the court's discretion, but shall be considered in favor of imposing a longer term of imprisonment for a felony for which an indefinite term of imprisonment is imposed:
 {¶ 34} "(1) The offender is a repeat or dangerous offender;
 {¶ 35} "(2) Regardless of whether the offender knew the age of the victim, the victim of the offense was sixty-five years of age or older, permanently and totally disabled, or less than eighteen years of age at the time of the commission of the offense.
 {¶ 36} "(3) The victim of the offense has suffered severe social, psychological, physical, or economic injury as a result of the offense.
 {¶ 37} "(C) The following do not control the court's discretion but shall be considered in favor of imposing a shorter minimum term of imprisonment for a felony for which an indefinite term of imprisonment is imposed: *Page 14 
 {¶ 38} "(1) The offense neither caused nor threatened serious physical harm to persons or property, or the offender did not contemplate that it would do so;
 {¶ 39} "(2) The offense was the result of circumstances unlikely to recur;
 {¶ 40} "(3) The victim of the offense induced or facilitated it;
 {¶ 41} "(4) There are substantial grounds tending to justify the offense though failing to establish a defense;
 {¶ 42} "(5) The offender acted under strong provocation;
 {¶ 43} "(6) The offender has no history of prior delinquency or criminal activity, or has led a law-abiding life for a substantial time before commission of the present offense;
 {¶ 44} "(7) The offender is likely to respond quickly to correctional or rehabilitative treatment.
 {¶ 45} "(D) The criteria listed in divisions (B) and (C) of this section do not limit the matters that may be considered in determining the minimum term of imprisonment to be imposed for a felony for which an indefinite term of imprisonment is imposed." See former R.C. 2929.12.
 {¶ 46} Here, the trial court stated on record that it had considered the presentence investigation report, the psychological evaluation, considered appellant's sentencing brief and various letters attached thereto, as well as the victim impact statements. The court also stated it had considered the various statements made in open court by friends and family of appellant as well as the victim. The court pointed *Page 15 
out that it had also considered appellant's statement in allocution. After making these announcements, the court continued:
 {¶ 47} "And the Court has considered the penalties for the offenses that are set forth under 2929[.]11 as that section existed at the time of the offense. I've also considered 2929[.]12, factors that the Court has taken into consideration in determining the minimum term for felonies committed prior to July 1, 1996. I have considered all of the factors set forth in that statute. I will comment on some of those in a moment."
 {¶ 48} The court then proceeded to comment upon the tremendous harm and hardship appellant's crime caused the victim as well as her family. This specific nature of this harm was detailed in open court when the victim and her children discussed the mental and physical torments the victim had endured from the time of the crime until appellant's arrest. The court also discussed the mental and emotional hardships with which those close to the victim were forced to cope. The court underscored, pursuant to the in-court statements, the severe psychological trauma the victim still experiences as a result of appellant's crime. The court emphasized that it considered the statements appellant made to the probation department and the psychologist. The court disclosed its profound dismay at appellant's seeming inability to take specific personal responsibility for his actions when he characterized the crime as "an accident beyond [his] control." The court remarked, in disbelief, "how a brutal, violent rape can be an accident beyond a person's control." Given the specific facts relating to the crimes at issue, the court concluded that appellant's criminal acts were committed under some of the most brutal and violent circumstances imaginable. The court stated: *Page 16 
 {¶ 49} "Some stranger breaking into someone's home in the middle of the night, armed with a weapon, forcibly raping that person by engaging in sexual intercourse. When you consider the particular nature and circumstances of this offense, again breaking in the middle of the night, armed with a knife, using that knife, the fact that we have an elderly woman who is two months short of her 58th
birthday at the time, threatening to harm, do the same to her children or child, when you consider this conduct on the wide spectrum of rape, aside from forcible rape of a child perhaps under similar circumstances, this is about as brutal and egregious as it gets. * * *"
 {¶ 50} With the foregoing in mind, the court pronounced its sentence.
 {¶ 51} Although appellant's sentence is lengthy, we do not believe it was disproportionate to the criminal act prompting it. As indicated above, the court did not impose a sentence beyond the statutory limits. Furthermore, the transcript of the sentencing proceedings demonstrates the trial court considered the factors set forth in former R.C. 2929.12, none of which served to limit the court's ultimate discretion, and went to great lengths to provide a thorough justification for its decision. Moreover, a review of the materials the court possessed at the time of sentencing indicates its comments were based upon identifiable information available in the record, e.g., victim impact statements, statements made aloud in court, the presentence investigation report, as well as appellant's psychological evaluation. Although the trial court did not engage in a point-by-point analysis of each aggravating or mitigating factor, such an *Page 17 
exercise was not necessary.[4] Under the circumstances, we hold the trial court did not abuse its discretion when it imposed an indeterminate 21 to 55 year sentence.
 {¶ 52} Appellant's second assignment of error lacks merit.
 {¶ 53} For the reasons set forth above, appellant's two assignments of error lack merit and the judgment entries of the Lake County Court of Common Pleas is hereby affirmed.
DIANE V. GRENDELL, P.J., TIMOTHY P. CANNON, J., concur.
[1] We note that Meeker has a very narrow application and relates specifically only to speedy trial challenges based upon preindictment delay. It does not ostensibly address the broader issue of a deprivation of due process. We shall discuss this issue in greater detail infra.
[2] By an amendment effective March 9, 1999, the General Assembly extended the statute of limitations for rape and burglary from 6 years to 20 years. See R.C. 2901.13(A)(3)(a). The amendment applies retroactively to offenses committed prior to the amendment, provided that the statute of limitations for such offenses had not yet expired by March 9, 1999. State v. Bentley, 11th Dist. No. 2005-A-0026,2006-Ohio-2503, at ¶ 12. Although the statue of limitations for felonious assault remains 6 years, appellant failed to raise the affirmative defense below and has therefore waived this argument. In any event, it has been held that a plea of guilty acts to waive the benefits of the application of statutes of limitations. State v. Brown (1988),43 Ohio App.3d 39, 44.
[3] The Supreme Court of Ohio uses the phrases "substantial prejudice" and "actual prejudice" interchangeably as they relate to an alleged violation of due process for a preindictment delay.
[4] It is important to point out that even had the trial court failed to mention its consideration of the former R.C. 2929.12 factors, such an omission is inconsequential. Pursuant to pre-Senate Bill 2 sentencing law, a silent record raises the presumption that a trial court considered the aggravating and mitigating factors set forth in former R.C. 2929.12. State v. Adams (1988), 37 Ohio St.3d 295, paragraph three of the syllabus. *Page 1