# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2849

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for District of |
| | * | Minnesota. |
| Susan Anne Seifert, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 14, 2006
Filed: April 19, 2006

_____

Before MURPHY, BOWMAN, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Susan Anne Seifert was convicted of arson in violation of 18 U.S.C. § 844(i). She appeals, arguing that the district court[1] abused its discretion in admitting into evidence a digitally-enhanced surveillance videotape, and that the evidence as a whole was insufficient to convict. This court affirms.

_____

[1]The Honorable James M. Rosenbaum, Chief Judge, United States District Court for the District of Minnesota.

On the night of December 29, 1999, a fire destroyed a building owned by Seifert's employer. A surveillance videotape, recovered from the rubble, shows dark images of the scene before the fire. The video depicts a person moving in the space of the building where the fire started, and smoke coming from that space after the person leaves. The Government argues that this person is Seifert.

Before trial, Seifert moved to exclude a digitally-enhanced copy of the original video. At a hearing outside the presence of the jury, Jack Hunter, a recently-retired employee of the Bureau of Alcohol, Tobacco, and Firearms, testified. Hunter, an expert in electronic surveillance and video analysis, described the computer program that enhanced the image. Because the original video is "time lapsed"—slower than normal speed—Hunter "real-timed" the enhanced copy. Hunter also explained that the original video is a "quad image," with the screen divided into quarters to depict images from four cameras. Hunter enlarged the video from the relevant camera, discarding the output from the three irrelevant ones. Finally, because the original image is dark, Hunter brightened it, additionally brightening the suspect and the surrounding area more than the rest of the image. On cross-examination, Hunter maintained that he simply enhanced the original video and did not manipulate it. Reviewing both the original and enhanced videos, the district court admitted the enhanced video:

> It appears to the Court that the enhanced imagery depicts the same image [as the original tape]. It does so in a fashion which does not change the image, but assists the jury in its observation and viewing of the image, which will enhance their understanding. I find that it's still accurate, authentic and trustworthy, and under those circumstances, I will permit its use in the trial.

The enhanced video was played for the jury. The jury also saw surveillance footage of Seifert, recorded about 35 minutes before the fire when she came in the office to assist a coworker. During closing argument, the Government noted similarities between Seifert in that footage and the arsonist in the enhanced video. Both individuals have short gray hair, and are wearing light pants, a dark jacket, and a white shirt with a dark emblem on the front.

Seifert argues that the district court erred in admitting the enhanced video because no one could know for certain whether it accurately reflects the original. Seifert emphasizes that Hunter failed to record his changes to the video. Finally, Seifert asserts that "Hunter's enhancements required judgment-decisions about which lines to make clearer, which shadows to erase, and which to make darker."

The district court's evidentiary ruling "will not be disturbed unless there is a clear and prejudicial abuse of discretion." *Bennett v. Hidden Valley Golf and Ski, Inc.*, 318 F.3d 868, 878 (8th Cir. 2003), quoting *United HealthCare Corp. v. American Trade Ins. Co.*, 88 F.3d 563, 573 (8th Cir. 1996). This court "will not reverse a judgment on the basis of erroneous evidentiary rulings absent a showing that those rulings had a substantial influence on the jury's verdict." *McPheeters v. Black & Veatch Corp.*, 427 F.3d 1095, 1101 (8th Cir. 2005).

The Government laid a proper foundation for the enhanced video. Although Hunter did not keep copies of the images at each stage of enhancement, he described in detail each step of that process. He explained that he did not brighten only the image of the suspect. Rather, he simultaneously brightened the image of the suspect and the surrounding area, which preserved their relative brightness.

Seifert's assertion that Hunter decided "which shadows to erase" is unsupported in the record. In Hunter's words, he was "adjusting" the image without "changing" it. Seifert identifies "no facts that tend to show that the edited or enhanced . . . videotape [is] inauthentic or untrustworthy." *See **United States v. Beeler***, 62 F. Supp. 2d 136, 149 (D. Me. 1999). Thus, there is no clear and prejudicial abuse of discretion. *See **Bennett***, 318 F.3d at 878.

Finally, Seifert argues that the evidence was insufficient to support the verdict. In evaluating sufficiency, this court views the evidence, and all reasonable inferences, most favorably to the Government. *See **United States v. Drews***, 877 F.2d 10, 13 (8th Cir. 1989). This court reverses "only if the jury must have had a reasonable doubt about an essential element of the crime." ***United States v. McDougal***, 137 F.3d 547, 553 (8th Cir. 1998).

Seifert concedes that the evidence supports that the building was burned intentionally. However, she contends that the evidence does not show she did it. According to Seifert, the evidence was not sufficient to prove that she "had a motive to burn the Co-op down or that she was more than merely present prior to the fire."

However, the jury heard evidence that, after the fire, Seifert pleaded guilty to stealing approximately $2,500 to $5,000 from the company over a five-year period. The Government maintained that Seifert started the fire to cover up her theft. Shortly before the fire, the company discovered a $54,605.89 balance in the company's cash-clearing account, representing revenues not deposited in the bank. Seifert, the company's bookkeeper, was aware that an auditor had been working for weeks to reconcile the account. Seifert knew that the company's financial records were located in the office area of the building—where the fire started. That evidence, combined with the video, supports the jury's verdict.

The district court's judgment is affirmed.

_____