**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Jerry Joseph ARMIJO, Defendant–Appellant.**

**No. 04CA2404.**

Colorado Court of Appeals,
Div. V.

April 19, 2007.

Certiorari Denied Sept. 11, 2007.

John W. Suthers, Attorney General, Jonathan Patrick Fero, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Keyonyu X O'Connell, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge VOGT J.

Defendant, Jerry Joseph Armijo, appeals the judgment of conviction entered on a jury verdict finding him guilty of theft, attempted theft, and third degree burglary. We affirm.

Defendant was identified by store employees as the person shown on a jewelry store surveillance videotape taking items from a locked cabinet. One of the missing items of jewelry was later found inside defendant's apartment.

### I.

At trial, the store's director of security explained the video surveillance system. He testified that the portion of the "tape"— actually, a compact disk—which the prosecutor intended to show the jury was an accurate and unaltered depiction of what the system had recorded on the day of the robbery.

Because of technical difficulties, the prosecutor was unable to play the tape using the court's projector, and he therefore played it for the jurors on his laptop computer. All twelve jurors later indicated that they had not been able to see the screen. On the last day of trial, the prosecutor told the court that his office's computer technician had managed to make the videotape compatible with the court's projector. The prosecutor noted that the modification would also enable the jurors to view the original time-lapse videotape—on which the people appear to be moving faster than they in fact were moving—at normal, or real-time, speed. Defendant objected, arguing that the prosecutor had produced only the original videotape and that the defense had relied on that version of the tape being played at trial. After ascertaining that the content of the tape had not been altered, the trial court overruled the objection and allowed the tape to be played for the jury.

On appeal, defendant argues that the trial court denied him his right to due process and the effective assistance of counsel when it allowed the prosecutor to replay the videotape on the last day of trial. He again contends, as he did at trial, that he had prepared his defense based upon the evidence provided in discovery, and that, had defense counsel been given the real-time videotape, he "probably would have changed his defense strategy." We are not persuaded.

### A.

■ Crim. P. 16, which sets forth pretrial disclosure obligations of the prosecution and the defendant, is intended to ensure a fair trial by permitting both sides to obtain relevant information before trial, thus reducing the risk of trial by ambush. *See Lanari v. People,* 827 P.2d 495, 499 (Colo.1992); *People v. Arapahoe County Court,* 74 P.3d 429, 431 (Colo.App.2003).

The rule requires a prosecuting attorney to make available to the defendant certain material and information within the prosecutor's possession or control, including, as relevant here, any "tangible objects held as evidence in connection with the case." Crim. P. 16(I)(a)(1)(IV).

■ Failure to comply with discovery rules is not reversible error absent a demonstration of prejudice to the defendant. *Salazar v. People,* 870 P.2d 1215, 1220 (Colo. 1994).

It is undisputed in this case that the prosecutor disclosed the original surveillance tape to defense counsel before trial, in accordance with Crim. P. 16. Defendant cites no authority, and we are aware of none, that would require the prosecutor to disclose, not only

an actual videotape or similar object in the prosecution's possession or control, but also derivative trial exhibits of identical content that the prosecutor has prepared from the disclosed material.

Courts in other jurisdictions have declined to grant relief based on nondisclosure of enlarged or enhanced materials where the defendant has not been prejudiced. *Compare State v. Hill*, 211 Kan. 287, 507 P.2d 342, 348 (1973) (defendant not entitled to reversal based on state's asserted failure to produced enlarged copies of two pictures, where defendant failed to show how he was prejudiced by not having the enlarged photos before trial); *People v. Calandrillo*, 29 Misc.2d 491, 215 N.Y.S.2d 361, 363 (Suffolk County Ct.1961)(defendant was entitled to discovery of allegedly forged documents and handwriting samples, but not to enlargements thereof); *and State v. Kerns*, 187 W.Va. 620, 420 S.E.2d 891, 899 (1992)(rejecting argument that W. Va. R.Crim. P. 16 required state to disclose blowups of exhibits and photographs prior to trial, and concluding that defendant's lack of access to those materials did not hamper his ability to prepare his case), *with State v. South*, 162 Ohio App.3d 123, 832 N.E.2d 1222, 1225–26 (2005)(reversal required where state's failure to provide defendant with copy of police cruiser camera videotape prevented defendant from enhancing videotape for use at trial in support of defense; defendant "must be afforded an opportunity at least equal to that which the state would have to enhance the videotape in preparation of trial").

■ Here, the record belies defendant's contention that he was prejudiced by the prosecutor's failure to provide him with a real-time copy of the surveillance videotape before trial. At a pretrial hearing on defendant's request for the appointment of conflict-free counsel, defense counsel advised the court:

> [E]arly last week I received that [surveillance] videotape—it's actually a CD. I have that with me. I viewed it, and I gave Mr. Armijo my opinion that it would not be a good idea to go to trial, and that's why we're not seeing eye to eye.

I think the videotape video surveillance is incriminating. I've shown it to basically a mock jury.... They all agreed that this was very incriminating.

And, once again, yesterday I showed it on a—up on a larger screen, and it was a lot clearer what was going—what could—it could be very incriminating. I advised Mr. Armijo that I thought it was incriminating, and he disagrees, and that's where we're at.

Thus, the record establishes that defendant had an opportunity equal to the prosecutor's to view and enhance the videotape before trial. Based on this, we decline to conclude that defendant was prejudiced by not receiving a real-time version of the tape from the prosecutor, or to conclude that defense counsel was reasonable in assertedly relying on the quality of the original videotape in preparing his defense.

Absent any showing of prejudice, defendant is not entitled to relief based on the prosecutor's failure to disclose the real-time version of the videotape. *See Salazar v. People, supra; cf. People v. Smith*, 185 Colo. 369, 376, 524 P.2d 607, 611 (1974) (reversal required where defense counsel was denied discovery of recorded statement and thereby could not make intelligent judgment regarding whether to call defendant as a witness); *State v. South, supra* (reversal required where refusal to provide copy of videotape denied defendant opportunity to enhance videotape in preparation for trial).

### B.

■ Nor is defendant entitled to reversal based on the trial court's ruling allowing the prosecutor to show the jury the real-time videotape on the last day of trial.

■ Like photographs, videotapes are ordinarily competent to illustrate or explain anything a witness may describe in words. *People v. Saiz*, 32 P.3d 441, 447 (Colo.2001); *People v. Avery*, 736 P.2d 1233, 1238 (Colo. App.1986). The law and policy governing the admissibility of photographs and motion pictures applies to videotapes. Thus, they must be relevant to the issues and must be properly authenticated before they may be intro-

duced. *Lanford v. People,* 159 Colo. 36, 39–40, 409 P.2d 829, 830 (1966); *People v. Avery, supra,* 736 P.2d at 1238.

■ A surveillance videotape may be played for a jury even where, as here, the jury also hears testimony from witnesses who recognized the defendant as the person on the videotape. *See Robinson v. People,* 927 P.2d 381, 384 (Colo.1996).

■ The trial court has broad discretion in determining the admissibility of tape recordings, and its ruling will not be disturbed on appeal absent an abuse of that discretion and resulting prejudice to the defendant. *See People v. Jeffers,* 690 P.2d 194, 198 (Colo. 1984) (no abuse of discretion to admit tape recordings with inaudible segments where defendant did not challenge tapes' authenticity or show how inaudible segments made tapes untrustworthy); *People v. Stephenson,* 56 P.3d 1112, 1121 (Colo.App.2001) (declining to reverse based on admission of videotape that was partially inaudible and on which defendant's face was partially blocked from view, where defendant did not show prejudice).

■ Because of the possibility of tampering with a tape, it is incumbent on the proponent of a tape recording to produce clear and convincing evidence of its authenticity and accuracy. *Alonzi v. People,* 198 Colo. 160, 164, 597 P.2d 560, 562 (1979). However, if the content of the tape has not been altered, playing the tape at real-time speed, or in an enhanced or enlarged form that does not alter the original recorded images, is generally permissible. *See United States v. Seifert,* 445 F.3d 1043, 1045 (8th Cir.2006) (no error to admit digitally-enhanced version of surveillance videotape where proper foundation was laid and no facts tended to show that enhanced videotape was inauthentic or untrustworthy); *United States v. Beeler,* 62 F.Supp.2d 136, 148–49 (D.Me.1999) (admitting enhanced surveillance videotape that was shown to be accurate and presented substance of original videotape in a larger, clearer, and easier to view format); *Barnes v. State,* 858 A.2d 942, 944 (Del.2004) (no error to admit convenience store's time-lapse surveillance videotape of armed robbery that had been converted to run at normal speed); *Jefferson v. State,* 818 So.2d 565, 566 (Fla. Dist.Ct.App.2002) (collecting cases supporting admission of altered-speed copy of time-lapse videotape).

We note that these cases are consistent with Colorado cases upholding the admission of enlarged or enhanced copies of photographs where the substance of the original photograph has not been altered. *See Armijo v. People,* 134 Colo. 344, 353, 304 P.2d 633, 638 (1956) (no error to allow prosecution to show autopsy photographs in form of projected color slides); *People v. Harris,* 633 P.2d 1095, 1098 (Colo.App.1981)(same); *People v. Torres,* 536 P.2d 868, 873 (Colo.App.1975) (not published pursuant to C.A.R. 35(f) ) (no error to admit enlarged photographic copies of exhibits and allow jurors to take enlargements into jury room).

Here, defendant does not contend that an inadequate foundation was laid for admission of the surveillance videotape, and he does not point to any "alteration" from the original surveillance tape other than the change to normal speed and an enhanced picture quality. Further, the security director testified that the store employees who identified defendant had also viewed the videotape on a large screen with a "high quality picture." In these circumstances, under the authorities set forth above, it was within the discretion of the trial court to allow the prosecutor to play the real-time videotape.

Nor do we agree with defendant that giving the jurors a second opportunity to view a videotape that they had previously been unable to see amounted to placing undue emphasis on the videotape. The record suggests that the trial court determined that playing the modified videotape once was preferable to the alternative that counsel and the court had initially considered—namely, repeatedly playing the videotape on the laptop screen and having jurors view it in small groups. *See People v. Rogers,* 68 P.3d 486, 494 (Colo.App.2002)(rejecting argument that transcript of sound recording impermissibly emphasized the evidence, and observing that, without transcript, jury might otherwise be compelled to replay tape numerous times to discern its contents).

In upholding the trial court's ruling, we also note that the record affords no basis for concluding that the prosecutor acted in bad faith. Rather, the enhanced videotape appears to have been shown only after a computer technician had devised a way to overcome the technical problem that originally led the prosecutor to play it on his laptop. Moreover, the fact that the entire tape, not simply the segment originally played by the prosecutor, was played on the last day of trial was the result of defendant's request that the whole tape be played for the jury.

Thus, defendant is not entitled to reversal based on the trial court's admission of the real-time surveillance videotape.

## II.

Defendant's additional contentions likewise afford no grounds for reversal.

■ Over defendant's objection, the trial court admitted testimony suggesting that defendant's driver's permit may have been suspended or revoked. Even if defendant's objection should have been sustained, there is no reasonable possibility that the brief testimony, without any elaboration or subsequent reference to it, influenced the jury's verdict or affected the fairness of the trial. *See Masters v. People,* 58 P.3d 979, 1003 (Colo. 2002); *People v. Larson,* 97 P.3d 246, 250 (Colo.App.2004).

■ The theft and attempted theft jury instructions were not erroneous for failing to require the jurors to find that defendant knew he was acting without authorization. *See* § 18–4–401(1)(a), C.R.S.2006. Where, as here, the term "knowingly" is listed as a separate enumerated element, it modifies all succeeding conduct elements. *See People v. Rodriguez,* 914 P.2d 230, 272 (Colo.1996); *People v. Bossert,* 722 P.2d 998, 1011 (Colo.1986). Moreover, even if the instructions, to which defendant did not object, were deemed erroneous, they would not rise to the level of plain error. There was no argument or evidence that defendant thought he was authorized to take the jewelry, and

the evidence of defendant's guilt was overwhelming. *See Bogdanov v. People,* 941 P.2d 247, 255 (Colo.1997), *amended,* 955 P.2d 997 (Colo.1997), *disapproved of on other grounds by Griego v. People,* 19 P.3d 1 (Colo.2001).

The judgment is affirmed.

Judge J. JONES and Justice ROVIRA * concur.