23CA0670 Peo v McKinley 12-18-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0670
Boulder County District Court No. 20CR1440
Honorable Patrick Butler, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

John Mark McKinley,

Defendant-Appellant.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE BERNARD*
Tow and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 18, 2025

Philip J. Weiser, Attorney General, Brian M. Lanni, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Rachel C. Funez, Alternate Defense Counsel, Glenwood Springs, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    A jury convicted defendant, John Mark McKinley, of first degree assault and attempted manslaughter. The trial court sentenced him to thirty years for the assault conviction and six years for the manslaughter conviction, to be served concurrently. He appeals the convictions and the sentences. We affirm, and we remand this case to the trial court to correct the mittimus.

## I.    Background

¶ 2    One morning in August 2020, Robert McEwen was waiting to use a public restroom in a park in Longmont. Defendant, accompanied by another man, came up to McEwen and asked him about some money McEwen owed defendant. The three men then began to drink and smoke "dope."

¶ 3    Defendant wanted to use the restroom, discovered it was locked, and knocked on the door. The victim was sleeping inside.

¶ 4    Defendant yelled at the victim to leave the restroom. He threatened to beat the victim up if he did not leave. The victim, yelling back, said he would use pepper spray on defendant if defendant harmed him.

¶ 5    The victim left the restroom, and the door hit defendant in the back. As the victim got on his bicycle to leave, defendant came up

1

behind the victim, stabbing the victim in his chest. (A subsequent medical examination determined the knife blade had punctured the victim's lung.) The victim rode away and called 911.

¶ 6      A security camera recorded the stabbing. The police arrested defendant, and the prosecution charged him with attempted first degree murder and first degree assault. At his trial, defendant asserted two defenses: self-defense and provoked or sudden heat of passion.

## II.    Sufficiency of the Evidence

¶ 7      Defendant contends that the evidence at trial was not sufficient to prove he acted with specific intent to cause serious bodily injury for the purposes of the first degree assault statute. We disagree.

### A.    Standard of Review and Applicable Law

¶ 8      When resolving sufficiency of the evidence issues, "we review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the convictions." *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005). In so doing, we must determine whether the relevant evidence, when viewed as a whole and in the light most favorable to the

prosecution, is sufficient to allow a reasonable person to conclude the defendant is guilty of the charges beyond a reasonable doubt. *People v. Douglas*, 2012 COA 57, ¶ 7. "We may not serve as the 'thirteenth juror' to weigh various pieces of evidence or resolve conflicts in the evidence." *Butler v. People*, 2019 CO 87, ¶ 20 (quoting *People v. Sprouse*, 983 P.2d 771, 778 (Colo. 1999)).

¶ 9 A person commits first degree assault if, "[w]ith intent to cause serious bodily injury to another person, he causes serious bodily injury to any person by means of a deadly weapon." § 18-3-202(1)(a), C.R.S. 2025. A person acts "with intent" when "his conscious objective is to cause the specific result proscribed by the statute defining the offense." § 18-1-501(5), C.R.S. 2025. A "penetrating knife . . . wound" qualifies as "[s]erious bodily injury." § 18-1-901(3)(p), C.R.S. 2025.

¶ 10 Because direct evidence of an individual's intent is unusual, the prosecution must often use circumstantial evidence to prove the defendant's intent. *People v. Johnson*, 2024 CO 32, ¶ 36. "A jury may properly infer intent from the defendant's conduct and the circumstances of the offense." *People v. Hines*, 2021 COA 45, ¶ 37.

3

¶ 11    Defendant asserts that there was insufficient evidence of his intent to cause serious bodily injury.  He submits, instead, that he was acting on impulse and in a dissociative state because he suffered from post-traumatic stress disorder, or PTSD.  At trial, a defense expert — a psychologist — said people experiencing PTSD may experience "disassociation" in which they become disconnected from their thoughts, feelings, and sense of identity.  Some may also experience a "dissociative fugue state," which can be like amnesia, in which they lose awareness of their whereabouts, actions, and identity.

¶ 12    Defendant points to the following evidence that, he submits, shows he was in a dissociative state.  First, he was upset because the victim refused to leave the restroom.  Second, he was defensive because the victim threatened him with pepper spray.  Third, he thinks the restroom door hitting him in the back triggered the dissociative state.  Fourth, he had been using intoxicants.

¶ 13    But none of these things was objective, irrefutable proof that defendant was in a dissociative state when he stabbed the victim. They were, instead, inferences based on other facts colored by

defendant's interpretation of them. And the jury was not required to accept that interpretation. *See People v. Perez*, 2016 CO 12, ¶ 31 (stating the jury must perform the factfinding function when conflicting evidence is presented, and a reviewing court may not second-guess the jury's conclusion when supported by the record).

¶ 14     We conclude, instead, that the evidence was sufficient to support defendant's conviction for first degree assault. In reaching this conclusion, we reiterate that we may not reweigh the evidence. *See Butler*, ¶ 20; *Perez*, ¶ 31; *Johnson*, ¶¶ 18, 31.

¶ 15     For example, the jury saw the video of the stabbing, and it contained evidence showing defendant acted with the intent to cause serious bodily injury. (The camera taking the video did not record sounds.) The jury could see defendant, armed with a knife, approaching the victim from behind and stabbing him in the chest, causing a penetrating knife wound. *See People v. Jackson*, 570 P.2d 527, 529 (Colo. 1977)(concluding that the evidence was sufficient to prove intent to cause seriously bodily injury when the defendant tried to stab the victim with a knife); *People v. Brake*, 553 P.2d 763, 769 (Colo. 1976)(concluding that specific intent could be

inferred by the defendant's use of a knife to cause serious bodily injuries).

¶ 16 The jury also heard about threats defendant made to the victim before he came out of the bathroom. And, immediately after the stabbing, defendant made statements to the victim supporting an inference he intended to cause serious bodily injury: "Go die," and "You deserved it."

### III. Admission of Video Evidence

¶ 17 Defendant contends the court erred when it admitted the video of the stabbing along with still shots taken from the video. We disagree.

### A. Standard of Review and Applicable Law

¶ 18 A trial court has broad discretion in admitting video recordings, and we will not disturb its ruling absent an abuse of discretion and prejudice to the defendant. *People v. Armijo*, 179 P.3d 134, 138 (Colo. App. 2007). A trial court abuses its discretion when its evidentiary ruling was manifestly arbitrary, unreasonable, or unfair. *People v. Clark*, 2015 COA 44, ¶ 14.

¶ 19 CRE 106 provides that, "[w]hen a statement or part thereof is introduced by a party, an adverse party may require introduction of

any other part or any other statement which ought in fairness to be considered contemporaneously with it."

¶ 20    "[U]nless otherwise provided by constitution, statute, or rule, all relevant evidence is admissible." *People v. Rath*, 44 P.3d 1033, 1038 (Colo. 2002)(citing CRE 402). "Evidence is relevant . . . as long as it is 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Id.* (quoting CRE 401).

¶ 21    But "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." CRE 403. Evidence is not unfairly prejudicial if it is merely damaging to the defendant's case, but it is if it has an "undue tendency to suggest a [jury's] decision on an improper basis, commonly but not necessarily an emotional one, such as sympathy, hatred, contempt, retribution, or horror." *People v. Dist. Ct.*, 785 P.2d 141, 147 (Colo. 1990).

¶ 22    Because the balance required by CRE 403 favors admission, a reviewing court must afford the evidence the maximum probative

7

value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected. *People v. Gibbens*, 905 P.2d 604, 607 (Colo. 1995). By requiring that the probative value of the evidence in question be "substantially outweighed" by the danger of unfair prejudice, CRE 403 makes clear that the need for exclusion must be great, "since exclusion is a drastic remedy and less restrictive measures . . . may suffice to reduce the danger of prejudice to an acceptable level." *Dist. Ct.*, 785 P.2d at 146 (citations omitted).

## B. Additional Facts

¶ 23 The park camera recording the stabbing did not record the victim coming out of the restroom and encountering defendant. Before trial, defendant objected to the admission of the recording of the stabbing, arguing that what the recording left out — the events occurring immediately surrounding the time when the victim came out of the bathroom — were crucial to part of his defense: The victim threatened to use pepper spray on him. Without any recording of the events at the restroom door, defendant submitted the video was an "incomplete account" of what happened contrary

to CRE 106. The court disagreed, deciding that CRE 106 was not a valid basis to exclude the video.

¶ 24 At trial, a man who had been monitoring the video when the stabbing occurred testified for the prosecution. After the jury watched the video, the monitor said (1) none of it had been deleted or edited; (2) various "jumps" in the video and a gap in the recording occurred right before the stabbing because the camera was motion activated; and (3) the monitor had used a control to manually zoom in to get a clearer picture of the attack.

¶ 25 During cross-examination of the monitor, defense counsel played a clip from the video and displayed a still photograph of the victim's hand taken from the video, asking whether the victim could be seen holding something looking like a container of pepper spray. Later, when questioning the victim whether he had pepper spray, defense counsel showed the victim two still photographs of his hand.

¶ 26 The next day, defense counsel called the psychologist to testify about how defendant's PTSD may have caused defendant to stab the victim "impulsively."

¶ 27    During cross-examination of the psychologist, the prosecutor showed her a slide show of five still photographs taken from the video, showing defendant approaching the victim from behind immediately before the stabbing.  The prosecutor asked the psychologist if defendant appeared to be acting impulsively according to the photographs.

## C.    Analysis

### 1.    Admission of the Video

¶ 28    Defendant first contends that CRE 106 prohibited admission of the video because, without showing what happened at the restroom door, it denied the viewer context necessary to understand the stabbing; it was "misleading" because the viewer could not see how the victim provoked defendant.  We are not persuaded.

¶ 29    When interpreting a rule of evidence, a court must "look to the language of the rule, interpreting it consistently with its plain and ordinary meaning." *People v. McLaughlin*, 2023 CO 38, ¶ 23.  If the rule is unambiguous, a court must apply it as written.  *Id.*  By its plain language, CRE 106 applies to "statement[s] or part[s] thereof."  The purpose of Rule 106 is to prevent a party from misleading a

jury by excluding portions of a statement that would clarify or explain the part already received. *McLaughlin*, ¶ 24.

¶ 30    In this case, the video was incomplete because it did not capture all the events and statements that were testified to at trial. But there were no recorded statements because the camera recording the video did not record sounds, and the events at the restroom door were not recorded because they apparently did not activate the camera. We therefore conclude that CRE 106 did not apply to any statements the victim made threatening defendant with pepper spray or to the events at the restroom door because CRE 106 contemplates the introduction of things that are in existence and can be offered into evidence: CRE 106 refers to the "introduction of any other part or any other statement which ought in fairness to be considered contemporaneously with it." As there were no such statements, the prosecution did not, therefore, create a misleading impression.

¶ 31    Defendant's contention also seeks to create a remedy that the cases analyzing CRE 106 do not contemplate. Normally, the remedy in cases such as *McLaughlin* requires the prosecution to introduce other parts of the statement to avoid unfairness. But,

since those parts did not exist in this case, defendant asserts we should conclude the trial court should have refused to admit the video. But he does not cite any CRE 106 cases proposing such a remedy.

¶ 32     Defendant next asserts that the court should have excluded the video under CRE 403 because the "incomplete video had great potential to unfairly prejudice [defendant] and mislead the jury, while its probative value to the prosecution was low" because it was undisputed defendant stabbed the victim. We conclude the court did not misapply CRE 403 or abuse its discretion when it decided to allow the prosecution to show the video to the jury. The video was what it was; it captured what it captured; it was not edited or redacted; the court showed it to the jury in its entirety; and the jury was informed of the video's limitations. Under these circumstances, although the video was incomplete because it did not capture everything that could have been seen and heard, it is inaccurate to characterize it as "misleading." Rather, the video presented "indisputable visual evidence" of the events it captured. *People v. Liebler*, 2022 COA 21, ¶ 21.

¶ 33    The video was the only footage of the incident, and it was

therefore highly probative of defendant's conduct in stabbing the

victim.  *See* CRE 401.  And it did not have an "undue tendency to

suggest a [jury's] decision on an improper basis, commonly but not

necessarily an emotional one, such as sympathy, hatred, contempt,

retribution, or horror."  *Dist. Ct.*, 785 P.2d at 147.

¶ 34    Any prejudice defendant may have suffered because

statements and events were not recorded was mitigated by

eyewitness testimony about the unrecorded activity.  *See id.* at 146;

CRE 403.  For example, McEwen testified at trial that the victim

had pepper spray, which supported defendant's defense.

¶ 35    Based on these various factors, we conclude that the probative

value of the video was not substantially outweighed by the danger

of unfair prejudice.  *See* CRE 403.

### 2.    Admission of Video Still Frames

¶ 36    Defendant submits that the prosecution should not have been

allowed to present a "slowed down frame-by-frame replay" of him

approaching and stabbing the victim during its cross-examination

of the psychologist.  Such a "frame-by-frame" replay, he continues,

was akin to showing a slow-motion version of the stabbing, which

unfairly prejudiced him because it suggested his actions were premeditated. The prosecution disagrees, asserting that defendant invited this error because defense counsel used still photographs from the video when examining witnesses. We agree with the prosecution, and we conclude that the invited error doctrine precludes our review of this issue. *See People v. Chavez*, 2012 COA 61, ¶ 51 (when defense counsel repeatedly elicited gang-related evidence, doctrine of invited error precluded review of the defendant's argument on appeal that prosecution's presentation of gang-related evidence was erroneous).

¶ 37 "The invited error doctrine prevents a party from appealing an error that he or she invited or injected into the case." *People v. Butler*, 251 P.3d 519, 522 (Colo. App. 2010). The doctrine only applies to errors in trial strategy, not to errors resulting from attorney oversight or incompetence. *Id.*

¶ 38 In this case, before the prosecutor cross-examined the psychologist, defense counsel used a still photograph from the video of the victim's hand when cross-examining the monitor and two still photographs of the victim's hand when cross-examining the victim.

14

¶ 39    Defense counsel's use of these photographs was strategic and intentional: Counsel wanted to show the victim had pepper spray and had threatened defendant with it before the stabbing.  *See id.* Although the prosecutor used still photographs to illustrate defendant's conduct instead of the victim's, it had the same effect: It froze individual frames from the video for the purpose of illustrating a specific point.

## IV.    Prosecutorial Misconduct

¶ 40    Defendant asserts the prosecution made several comments throughout the trial constituting misconduct.  We address each statement in turn below.

### A.    Standard of Review and Applicable Law

¶ 41    Review of prosecutorial misconduct claims entails a two-step process.  We consider, first, whether the prosecutor's arguments were improper and then whether any improper statement requires reversal under the applicable standard.  *People v. Carter*, 2015 COA 24M-2, ¶ 63.

¶ 42    To assess whether a prosecutor's comments were improper, a reviewing court must consider the totality of the circumstances, including "the language used, the context in which the statements

15

were made, and the strength of the evidence supporting the conviction." *Domingo-Gomez v. People*, 125 P.3d 1043, 1050 (Colo. 2005). In closing argument, a prosecutor has "wide latitude to make arguments based on facts in evidence and reasonable inferences drawn from those facts." *People v. Strock*, 252 P.3d 1148, 1153 (Colo. App. 2010). A prosecutor may not intentionally misstate the evidence or the law. *Domingo-Gomez*, 125 P.3d at 1049.

¶ 43    To preserve a claim of prosecutorial misconduct for appellate review, the defendant must make a contemporaneous objection to give the trial court "an opportunity to correct any error that could otherwise jeopardize [the defendant's] right to a fair trial." *People v. Rhea*, 2014 COA 60, ¶ 44 (quoting *People v. Pahl*, 169 P.3d 169, 183 (Colo. App. 2006)). When preserved, a trial court's rulings on prosecutorial misconduct are reviewed for abuse of discretion and harmless error. *People v. Walker*, 2022 COA 15, ¶¶ 27-28. An error is not harmless, requiring us to reverse a conviction, if there is a "reasonable probability" the error contributed to the defendant's conviction. *People v. Monroe*, 2020 CO 67, ¶ 17.

¶ 44    Unpreserved claims of prosecutorial misconduct are reviewed for plain error. *Walker*, ¶ 28. "[T]he appropriate standard for plain-error review is whether an appellate court, after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Wilson v. People*, 743 P.2d 415, 420 (Colo. 1987). Only misconduct that is "flagrantly, glaringly, or tremendously improper" warrants reversal under the plain error standard. *Domingo-Gomez*, 125 P.3d at 1053 (quoting *People v. Avila*, 944 P.2d 673, 676 (Colo. App. 1997)).

## B.    Preserved Contentions

¶ 45    We assume, without deciding, that defendant objected to one of the prosecutor's comments that he submits was misconduct, and we conclude that he clearly objected to four others.

¶ 46    First, during voir dire, the prosecution asked several prospective jurors whether they were prepared to render a "truthful and honest" verdict. The parties disagree about whether this contention was preserved. We will assume it was.

¶ 47    Defendant contends this question misstated the burden of proof. But, aside from this bare assertion, he does not explain how

17

the question misrepresented the burden of proof. We therefore decline to review this contention. *See People v. Relaford*, 2016 COA 99, ¶ 70 n.2 ("We do not consider bare or conclusory assertions presented without argument or development.").

¶ 48     The other four comments occurred during closing argument.

¶ 49     To begin, the prosecutor said, "[B]efore [defendant] gets to stab someone in the chest and almost kill them, [defendant] has to prove, if he's going to claim self-defense, several different things."

¶ 50     This comment was error because it improperly shifted the burden of proof to defendant. *See People v. Santana*, 255 P.3d 1126, 1130 (Colo. 2011)(stating that it is improper for a prosecutor to shift the burden of proving innocence to a defendant). But we conclude the error was harmless there was no "reasonable probability" the error contributed to defendant's conviction. *Monroe*, ¶ 17.

¶ 51     The prosecutor's misstatement of law was brief and isolated. Before making this comment, the prosecutor stated it was her burden to prove defendant was not acting in self-defense. And the jury understood the prosecution, not defendant, carried the burden of disproving self-defense, because the court instructed the jury

about that law before closing arguments. And the court gave the jury those written instructions to guide their deliberations.

¶ 52  Next, the prosecutor said there was "zero reason" for defendant to stab the victim, and the psychologist "agreed with that." This comment concerned the psychologist's testimony that, according to the video, defendant did not appear to be triggered or threatened. It was a fair comment on her testimony.

¶ 53  Continuing, the prosecutor said the psychologist "disprov[ed] the defense." As with the immediately preceding comment, this comment concerned the psychologist's testimony that, according to the video, defendant did not appear to be triggered or threatened. It, too, was a fair comment on her testimony.

¶ 54  Last, the prosecutor said the psychologist "didn't do her homework." The third comment was a fair observation about the psychologist's testimony when she conceded she had not reviewed several important pieces of information before trial, including the video, defendant's medical records, written police reports and interviews, and some police body camera footage.

## C. Unpreserved Contentions

¶ 55    Defendant did not object to the following comments the prosecutor made when cross-examining the psychologist and during closing argument.

¶ 56    First, defendant submits the prosecutor misstated the evidence — and implied certain events did not occur just because they were not captured on video — when she asked the psychologist during cross-examination to confirm that (1) the video did not show any evidence of defendant's specific PTSD triggers, and (2) there was no evidence of physical violence at the scene occurring before the stabbing. We are not persuaded.

¶ 57    The prosecutor merely asked questions about things that were not shown by the video; the prosecutor did not misstate the evidence. *See Domingo-Gomez*, 125 P.3d at 1049. And the prosecutor did not say that things the camera did not capture, such as statements made by defendant or the victim or the events at the restroom door, did not occur. We therefore conclude these remarks were not improper. *See Carter*, ¶ 63.

¶ 58    Second, defendant contends that the following statements by the prosecutor during closing were false: "[N]owhere in th[e] video

. . . shows [the victim] ever deploying pepper spray," and "[defendant] didn't act reasonabl[y] on that video."

¶ 59 Neither statement was improper; rather, both were fair comments about the video's contents. *See id.*; *Domingo-Gomez,* 125 P.3d at 1049. There was no indication on the video that the victim *used* pepper spray. Similarly, the prosecutor's statement that the video showed defendant did not act reasonably directly responded to defense counsel's statement that it was the jury's role to determine whether defendant reasonably believed he was acting in self-defense. *See People v. Samson,* 2012 COA 167, ¶ 31 (stating that a prosecutor may comment on evidence admitted at trial).

¶ 60 Third, defendant asserts the prosecutor's comment that the victim opened the restroom door, contacting defendant "minutes before the stabbing," was improper because, according to the video, the time between when the victim opened the door and when defendant stabbed him was one minute and twenty-eight seconds. Defendant submits this comment prejudiced him because the timing of the events was relevant to the jury's evaluation of the reasonableness of his actions and of his state of mind.

¶ 61    Assuming, without deciding, that this comment was error, we apply the plain error standard of review. *See Walker*, ¶ 28. Doing so, we conclude the error did not "so undermine[] the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Wilson*, 743 P.2d at 420. The statement of "minutes before," as opposed to a minute and thirty-eight seconds before, was comparatively insignificant because the jury rejected the argument that the victim accidentally hitting defendant with the door was a "highly provoking act" for the purposes of heat of passion, nor was it an "imminent" use of unlawful force justifying defendant approaching the victim from behind and stabbing him.

¶ 62    Fourth, defendant points to the prosecutor's following comments:

> *You have to believe* that he used physical force in order to defend himself for what he reasonably believed to be the use or imminent use of unlawful physical force by the victim . . . . *[A]fter this first particular prong that you'd have to believe in order to find he acted in self-defense, . . . [y]ou have to believe all of these in order to find he acted in self-defense.* Second, *you have to believe* he used a degree of force which he reasonably believed to be necessary. . . . And *you have to believe* that he

22

did not act with an intent to cause bodily injury or death . . . [or] *provoke the use of unlawful physical force by [the victim], and you have to believe that he* was not the initial aggressor.

(Emphasis added.)

¶ 63 Defendant submits the prosecutor's phrase "you have to believe" shifted the burden of proof because it implied defendant would have to prove various things to claim self-defense. We disagree.

¶ 64 In the passage quoted above, the prosecutor was listing the elements of self-defense, telling the jury it had "to believe" those things to acquit defendant under his self-defense theory. But telling the jury it would have to find certain facts to decide defendant had acted in self-defense did not shift the burden of proof from the prosecution to the defense; it simply emphasized what the requirements for self-defense were.

¶ 65 Fifth, the prosecutor said during closing argument that the heat of passion instruction did not apply to this case because defendant was the initial aggressor. Defendant submits this comment was plain error because it misstated the law as to self-defense and heat of passion.

¶ 66     In context, the prosecutor said:

> There is nothing [in the heat of passion instruction] that applies, because [defendant] was the initial aggressor in this situation. He was not acting in the heat of passion when he's the person who started this whole fight, this whole situation in the first place, by threatening [the victim] while [the victim] was still in the bathroom gathering his belongings.

This was fair comment on the lack of evidence supporting the defense's theory. *See Santana*, 255 P.3d at 1132 (noting the prosecution may comment on the lack of evidence confirming defendant's theory of the case).

¶ 67     Although the prosecutor's conflation of heat of passion and self-defense defense was inartful, the comments were not error. *See Samson,* ¶ 30 ("[B]ecause arguments delivered in the heat of trial are not always perfectly scripted, reviewing courts accord prosecutors the benefit of the doubt when their remarks are ambiguous or simply inartful.").

¶ 68     The prosecutor's comment that defendant was the initial aggressor was supported by evidence: (1) defendant used a threat of violence to get the victim to exit the restroom; (2) the victim responded that he had pepper spray and would use it; and

(3) defendant stood near the restroom door while awaiting the victim's exit.

¶ 69     This evidence undercut not only defendant's theory of self-defense but also his theory of heat of passion because it showed the victim's provoking act — opening the door into defendant — was not "unexpected" and "unforeseen." *People v. Valdez*, 183 P.3d 720, 723 (Colo. App. 2008)(stating that heat of passion does not apply when the defendant intentionally seeks out the highly provoking act). The victim's reference to pepper spray came after defendant had already threatened him, so, when defendant was waiting closely outside the door, he was aware the victim could use pepper spray against him.

¶ 70     Sixth, the prosecutor told the jury that the psychologist, "when she reviewed the [still frames,] she . . . agreed that, at the moment that [defendant] pulled out that knife, [the victim] did not pose a threat to him." Defendant asserts this was a misstatement of law. It was not. Instead, we conclude it was a fair comment about the psychologist's testimony.

## V.    Jury Instructions

¶ 71    Defendant contends the court erred when it gave two jury instructions: one concerning voluntary intoxication and the other concerning provocation and self-defense.  We disagree.

### A.    Intoxication Instruction

¶ 72    A trial court has a duty to instruct the jury correctly on the applicable law.  *Riley v. People*, 266 P.3d 1089, 1092 (Colo. 2011). We review jury instructions de novo to determine whether they accurately informed the jury of the governing law.  *Id.* at 1092-93.

¶ 73    As we observed above, we review an objection made at trial to a jury instruction for harmless error.  *McDonald v. People*, 2021 CO 64, ¶ 55.  Under this standard, we will only reverse a conviction if the error affected the defendant's substantial rights and if it is reasonably possible that the error contributed to the defendant's conviction.  *Id.*; *People v. Garcia*, 28 P.3d 340, 344 (Colo. 2001). Unpreserved objections are reviewed for plain error, meaning that the error must be obvious and substantial.  *People v. Ujaama*, 2012 COA 36, ¶¶ 41-42.

¶ 74    The prosecution proposed, and the court approved, a jury instruction stating that "[i]ntoxication of the accused is not a

defense to a criminal charge." The court overruled defense counsel's objection that the instruction was irrelevant, explaining that the instruction's basis for inclusion was the victim's testimony that defendant was acting as if he were intoxicated before the stabbing.

¶ 75 Defendant contends that the court erred by quoting only part of the relevant statute, which states evidence of a defendant's intoxication may be used to "negative the existence of a specific intent if such intent is an element of the crime charged." § 18-1-804(1), C.R.S. 2025. In this case, the prosecution had charged defendant with two specific intent crimes: first degree assault and attempted first degree murder. *See* §§ 18-3-102(1)(a), -3-202(1)(a), C.R.S. 2025; § 18-2-101, C.R.S. 2025.

¶ 76 Although we agree with defendant that, by misstating the intoxication statute, the instruction was erroneous, *see Riley*, 266 P.3d at 1092, we nonetheless hold the error was harmless.

¶ 77 The question of defendant's intoxication was immaterial at trial. True, there was some evidence concerning defendant potentially being intoxicated. McEwen said defendant had been

drinking and doing dope with him; the victim said defendant appeared to be drunk before the stabbing.

¶ 78 But defendant did not raise intoxication as a defense. He did not argue he was intoxicated when he stabbed the victim. He made no reference to intoxication bearing on the issue of specific intent. Simply put, defendant's intoxication was not an issue at trial.

¶ 79 As a result, we conclude this error did not affect defendant's substantial rights, *see Auman v. People*, 109 P.3d 647, 665 (Colo. 2005)(stating that when an error concerns an "uncontested issue," a defendant's substantial rights are not affected), because there was no reasonable possibility the intoxication instruction contributed to defendant's conviction. *See Garcia*, 28 P.3d at 344.

## B.     Provocation Instruction

¶ 80 Defendant challenges a subsection in the self-defense instruction addressing provocation. *See* COLJI-Crim. H:12(4) (2024); § 18-1-704(3)(a), C.R.S. 2025. The instruction provides that self-defense is unavailable as an affirmative defense if the jury decides that a defendant, "with intent to cause bodily injury or death to another person, provoke[d] the use of unlawful physical force by that other person." COLJI-Crim. H:12(4) (2024).

28

¶ 81    Whether sufficient evidence exists to support a jury instruction related to an affirmative defense is a question of law we review de novo.  *O'Shaughnessy v. People*, 2012 CO 9, ¶ 13.  A court properly instructs the jury on provocation if there is a "scintilla of evidence" to support it.  *Galvan v. People*, 2020 CO 82, ¶¶ 24-25 (citation omitted).

¶ 82    Defendant submits the court erred when it gave the provocation instruction because there was not a "scintilla of evidence" to show he provoked the victim before the stabbing.  We disagree.

¶ 83    At trial, the following evidence supported the provocation instruction:

- Defendant banged on the restroom door and threatened to hurt the victim.

- Defendant insisted on waiting right outside the restroom door even though the victim suggested he find another restroom.

- When the victim left the restroom, the door struck defendant because he was standing close to it.

- The victim and McEwen testified that, after the stabbing, defendant said to the victim, "Go die," and "You deserved it."

¶ 84 Taken together, this evidence supports the inference that defendant initially provoked the victim and positioned himself right outside the door, so he would have "an excuse to physically harm" the victim later. *Id.* at ¶ 33. Defendant's statement that the victim "deserved it" suggests he was punishing the victim for hitting him with the door — an event that would not have occurred were it not for defendant's initial provocation and his positioning himself close to the restroom's door.

¶ 85 We therefore conclude there was at least "a scintilla of evidence" to support the prosecution's provocation instruction and the court did not err by giving the instruction. *Id.* at ¶¶ 24-25 (citation omitted).

## VI. Cumulative Error

¶ 86 Defendant asserts the cumulative effect of the court's errors in admitting the video, in allowing the prosecutor to use still photographs taken from the video, in instructing the jury, along

with prosecution's comments constituting misconduct violated his right to a fair trial. We disagree.

¶ 87 We review claims of cumulative error de novo. *Howard-Walker v. People*, 2019 CO 69, ¶ 22. Cumulative error happens when "numerous formal irregularities, each of which . . . might be deemed harmless, . . . in the aggregate show the absence of a fair trial, in which event a reversal would be required." *Oaks v. People*, 371 P.2d 443, 446 (Colo. 1962). Reversal is required when "the cumulative effect of [multiple] errors and defects substantially affected the fairness of the trial proceedings and the integrity of the fact-finding process." *Howard-Walker*, ¶ 24 (quoting *People v. Lucero*, 615 P.2d 660, 666 (Colo. 1980)). Cumulative error review applies only if we conclude the trial court committed more than one error; a defendant's mere assertions of error are insufficient to warrant reversal. *People v. Blackwell*, 251 P.3d 468, 477 (Colo. App. 2010).

¶ 88 We have concluded, or assumed, three errors occurred in defendant's trial concerning (1) the prosecutor's statement that the victim had opened the restroom door "minutes before" the stabbing; (2) the prosecutor's statement that defendant "ha[d] to prove" self-

defense; and (3) the jury instruction regarding intoxication. We determined that the first error did not rise to the level of plain error and that the second and third errors were harmless.

¶ 89   Looking at the three errors more closely, we conclude they did not substantially affect the fairness of the trial proceedings or the integrity of the factfinding process. *See Howard-Walker*, ¶ 24. The "minutes before" statement did not undermine the trial's reliability because it was comparatively insignificant; the burden shifting statement was brief and isolated, and the jury was properly instructed that the prosecution bore the burden of proof; and the instructional error was insignificant because intoxication played no role in the defense. *See People v. Cuellar*, 2023 COA 20, ¶ 83 (concluding that multiple individually harmless errors arising from the prosecution's misstatements did not require reversal under the cumulative error doctrine because the misstatements were brief and did not violate the defendant's constitutional rights, and the jury was aware of the correct burden of proof); *People v. Conyac*, 2014 COA 8M, ¶ 152 (stating that there was no reversible cumulative error when the multiple errors found did not "substantially prejudice[] [the] defendant's right to a fair trial").

## VII.    Sentencing

### A.    Correction of the Mittimus

¶ 90    The prosecution charged defendant with two crime-of-violence sentence enhancers under section 18-1.3-406(2)(a)(I)(A) and (B), C.R.S. 2025.  But, although the jury's verdict did not include any crime-of-violence findings, defendant's mittimus states the jury made such findings.  The record before us is clear on these facts.

¶ 91    Defendant contends, the prosecution concedes, and we agree that the mittimus incorrectly states the jury found two crime-of-violence sentence enhancers.

¶ 92    Crim. P. 36 provides that "[c]lerical mistakes in judgments, orders, or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time."  Clerical errors under Crim. P. 36 may include "not only errors made by the clerk in entering the judgment, but also those mistakes apparent on the face of the record . . . which cannot reasonably be attributed to the exercise of judicial consideration or discretion."  *People v. Baker*, 2019 CO 97M, ¶ 21 (quoting *People v. Glover*, 893 P.2d 1311, 1316 (Colo. 1995)).

¶ 93    We therefore remand this case to the district court to correct the mittimus under Crim. P. 36.  *See People v. Krutsinger*, 121 P.3d 318, 325 (Colo. App. 2005)(clerical error in mittimus is proper grounds for remand correcting the error).

### B.    Aggravated Sentence for Attempted Manslaughter

¶ 94    Attempted reckless manslaughter is a class five felony with a presumptive sentencing range of one to three years.  § 18-1.3-401(1)(a)(V.5)(A), C.R.S. 2025; § 18-2-101(4); § 18-3-104(2), C.R.S. 2025.  But, if there are extraordinary aggravating circumstances, a court may impose a sentence of up to six years.  § 18-1.3-401(6).

¶ 95    In this case, the court sentenced defendant to six years for the attempted manslaughter conviction.  It agreed with a statement in the presentence investigation report that a two-to-six-year aggravated range was applicable because defendant was on parole when he stabbed the victim.  The court also noted defendant's criminal history was "incredibly aggravated" and included several prior violent felony convictions.

¶ 96    Defendant contends that the court improperly imposed an aggravated sentence for attempted manslaughter based on the two crime-of-violence sentence enhancers that were erroneously listed

on the mittimus. But the transcript of the sentencing hearing shows the court imposed the six-year sentence based on defendant's lengthy criminal history and the fact he was on parole at the time of the stabbing. Since both factors were proper bases to aggravate his sentence, we reject his request to remand the case for resentencing "without the [crime-of-violence] sentence enhancers." *See* § 18-1.3-401(8)(a)(II) (requiring a court to aggravate a sentence when a defendant is on parole at the time of the offense); § 18-1.3-401(6) (court may impose an aggravated sentence based on information in the presentence report).

### C. Thirty-Year Sentence for First Degree Assault

¶ 97 The sentencing range for defendant's first degree assault conviction, a class three felony, was ten to thirty-two years. §§ 18-1.3-401(8)(a)(I), -401(10)(a), -401(10)(b)(XII); -406(1)(a); § 18-3-202(1)(a). The court sentenced him to prison for thirty years.

¶ 98 Defendant asserts that his thirty-year sentence was constitutionally disproportionate and that the court abused its sentencing discretion. We disagree with both contentions.

¶ 99 We review de novo whether defendant's sentence was grossly disproportionate. *Wells-Yates v. People*, 2019 CO 90M, ¶ 35.

35

Because defendant did not raise a proportionality claim in the trial court, the issue is unpreserved, and the applicable standard of reversal is plain error. *See Walker*, ¶ 60. An error is plain when it is so obvious that the action challenged on appeal clearly violates statute, a well-settled legal principle, or Colorado case law. *Id.* at ¶ 68.

¶ 100 The Eighth Amendment only forbids extreme sentences that are grossly disproportionate to the crime. *People v. McCulloch*, 198 P.3d 1264, 1268 (Colo. App. 2008). Accordingly, it is "exceedingly rare" for a court to determine that a sentence is so extreme that it is grossly disproportionate. *Wells-Yates*, ¶ 5 (citation omitted).

¶ 101 We conduct a two-step analysis when considering a proportionality challenge: (1) an abbreviated proportionality review, which entails the comparison of the gravity and seriousness of the offense with the harshness of the penalty; and (2) an extended proportionality review. *People v. Crawley*, 2024 COA 49, ¶ 9. We need not proceed to the second step unless our abbreviated review gives rise to an inference of gross disproportionality. *Id.*

¶ 102 In this case, first degree assault is per se grave or serious, so we may skip to considering the harshness of the penalty. *See id.* at

¶ 11; *People v. Gee*, 2015 COA 151, ¶ 60. The assessment of the harshness of the penalty includes consideration of the sentence's length and the defendant's parole eligibility. *Wells-Yates*, ¶ 14. Whether a defendant is eligible for parole is relevant because parole can reduce the actual period of confinement, thereby reducing the penalty's harshness. *Id.* Any review of the harshness of the penalty is "substantially circumscribed because the legislature's establishment of the harshness of the penalty deserves great deference." *Id.* at ¶ 62. A finding of gross disproportionality is rare if a crime has been designated per se grave or serious, especially outside the capital punishment context. *Id.*; *Rutter v. People*, 2015 CO 71, ¶ 16.

¶ 103   We conclude the court did not err when it did not, on its own, decide that defendant's thirty-year sentence raised an inference of gross disproportionality. *See Walker*, ¶¶ 60, 68. As we noted above, defendant's crime was per se grave and serious, *see Gee*, ¶ 60, and the harshness of his penalty was diminished because, although his sentence was at the higher end of the sentencing range, it was subject to parole, *see Wells-Yates*, ¶ 14. In similar cases, when the defendant's crime was deemed per se grave and

37

serious and the challenged sentence was longer than thirty years, this court has found no inference of gross proportionality. *See Gee*, ¶¶ 57-66 (concluding that the defendant's consecutive forty-eight-year sentences did not raise an inference of disproportionality); *Crawley*, ¶¶ 24-27 (finding no inference of disproportionality when forty-eight-year sentence, while lengthy, was subject to parole).

¶ 104 Because the sentencing court correctly applied well-settled legal principles and case law in imposing defendant's sentence, it did not err. *See Walker*, ¶ 68.

¶ 105 Next, defendant submits that, even if his thirty-year sentence is constitutionally permissible, the court nevertheless abused its sentencing discretion because it did not consider the mitigating circumstances surrounding the offense, namely his PTSD and other mental and emotional impairments. We are not persuaded.

¶ 106 As a rule, appellate courts may not reweigh the evidence considered by the sentencing court. *Liebler*, ¶ 20. In this context, we will only overturn a trial court's sentence if the court abused its discretion when imposing it. *People v. Herrera*, 2014 COA 20, ¶ 16. A sentencing court abuses its discretion if it does not consider "the nature of the offense, the character and rehabilitative potential of

the offender, the development of respect for the law and the deterrence of crime, and the protection of the public." *People v. Leske*, 957 P.2d 1030, 1043 (Colo. 1998)(quoting *People v. Fuller*, 791 P.2d 702, 708 (Colo.1990)).

¶ 107    A sentence is sufficient if the record contains evidence to support the reasons for the sentence, a reasonable explanation of the sentence imposed, and information permitting the conclusion that the sentencing court considered all essential factors. *People v. Preciado-Flores*, 66 P.3d 155, 169 (Colo. App. 2002). A court does not abuse its discretion if it finds aggravating factors to be more compelling than any mitigating factors. *People v. Eurioste*, 12 P.3d 847, 851 (Colo. App. 2000). We will generally uphold a sentence within the presumptive range and supported by facts in the record. *Herrera*, ¶ 17; *Fuller*, 791 P.2d at 708.

¶ 108    In this case, we conclude the court did not abuse its sentencing discretion. It considered the nature of the offense, defendant's character, his mental health issues, his potential to be rehabilitated, and the protection of the public. *See Leske*, 957 P.2d at 1043. The court's focus on defendant's lengthy criminal record is not an indication it abused its discretion or ignored mitigating

factors, such as defendant's mental health. *See Eurioste*, 12 P.3d at 851. The sentence is supported by the record and is within the range required by law. *See Herrera*, ¶ 17.

¶ 109　The judgment is affirmed, and the case is remanded to the trial court to remove the reference to crime-of-violence findings from the mittimus.

JUDGE TOW and JUDGE MOULTRIE concur.